In the Matter of the Adoption of JESSICA XX. JONATHAN YY., Appellant; LORRAINE WW. et al., Respondents; ROBERT ABRAMS, as Attorney-General, Intervenor-Respondent-Appellant.

Third Department, December 11, 1980

#### APPEARANCES OF COUNSEL

*David J. Freeman* for appellant.

*Streifer, Barnovitz & Samoff, P. C. (Jay L. Samoff* of counsel), for respondents.

*Robert Abrams, Attorney-General (Robert J. Schack* and *Shirley Adelson Siegel* of counsel), as intervenor-respondent-appellant.

#### OPINION OF THE COURT

GREENBLOTT, J. P.

Petitioner seeks to have the adoption order vacated on the ground that he is the natural father of the child and,

as such, should have received notice of the adoption proceeding and been afforded an opportunity to be heard. He claims that section 111-a of the Domestic Relations Law is unconstitutional on the ground that it denied him due process and equal protection of the law, since the statute did not require him to be served with notice of the adoption proceeding.

Petitioner and respondent Lorraine lived together for approximately two years prior to the birth of the child Jessica, the subject of this proceeding. Petitioner claims that Lorraine disappeared, taking the baby with her. In August, 1977, Lorraine married Richard, and a year later respondents commenced adoption proceedings in the Ulster County Family Court. Approximately 26 months after the birth of Jessica, petitioner, although he had never supported the child, filed a paternity petition in the Westchester County Family Court seeking to be adjudicated the father of Jessica. On March 7, 1979 the Ulster County Family Court signed the adoption order and subsequently denied petitioner's motion to vacate the adoption order from which petitioner appeals.

The United States Supreme Court has held that the interests of unwed fathers in the custody of their children are "cognizable and substantial" *(Stanley v Illinois*, 405 US 645, 652). It therefore determined (pp 653-658) that a State could not, consistent with due process requirements, presume that unmarried fathers are unsuitable and neglectful parents and that parental unfitness could only be established on the basis of individualized proof.

The *Stanley* decision was interpreted by the Court of Appeals as requiring that, although the consent of a putative father to the adoption of his child born out of wedlock was not necessary, notice and an opportunity to be heard must be afforded an unwed father before his parental rights may be terminated (see, e.g., *Matter of Malpica-Orsini*, 36 NY2d 568, app dsmd *sub nom. Orsini v Blasi*, 423 US 1042). To provide the constitutional safeguards mandated by the *Stanley* decision, the Legislature enacted section 111-a of the Domestic Relations Law (L 1976, ch 665, eff Jan. 1, 1977) providing that notice of an adoption proceeding must be given in seven situations.

Petitioner does not contend that he falls within any of the seven categories. However, he contends that his commencement of the paternity action in Westchester County was the equivalent of filing a notice of intent to claim paternity. We disagree. Adoption is a creature of statute, and, as such, requires strict observance of the statutory requirements. (See *Matter of Eaton*, 305 NY 162; *Matter of Fitzsimmons v Liuni*, 51 Misc 2d 96, revd on other grounds 26 AD2d 980.) We are constrained, therefore, to conclude that petitioner has failed to comply with the requirements of section 111-a of the Domestic Relations Law. Nor do we find any constitutional infirmity in this section. We add, parenthetically, that petitioner could have insured his right to notice by signing the putative father registry created by section 111-a and section 372-c of the Social Services Law. He failed to do so.

Six weeks after the adoption order was granted, the United States Supreme Court held that section 111 (subd 1, par [c]) (not § 111-a) of the Domestic Relations Law was unconstitutional since it treated unmarried parents differently because of their sex, in violation of the equal protection clause *(Caban v Mohammed*, 441 US 380). Thus, an unwed father, like an unwed mother, may now veto an adoption of his child merely by refusing to give his consent, absent a showing of abandonment, neglect or surrender (see *Matter of Mitchell* [*Onondaga Dept. of Social Servs.*], 70 AD2d 367; *Matter of Cecilie Ann T.*, 101 Misc 2d 472; *Matter of Anthony John P.*, 101 Misc 2d 918).

We hold that *Caban* is not entitled to retroactive effect in view of the well-settled legal doctrine that final dispositions should not be disturbed by a subsequent change in the decisional law *(Childs v Childs*, 69 AD2d 406). Petitioner's motion to vacate the adoption order was made nearly two months after the *Caban* decision and approximately three and one-half months after the adoption order became final. We agree with the statement made by Mr. Justice STEVENS in *Caban* (441 US 380, 415-416 [dissenting opn]) : "The adoption decrees that have been entered without the consent of the natural father must number in the millions. An untold number of family and financial

decisions have been made in reliance on the validity of those decrees. Because the Court has crossed a new constitutional frontier with today's decision, those reliance interests unquestionably foreclose retroactive application of this ruling. See *Chevron Oil Co. v. Huson*, 404 U. S. 97, 106-107. Families that include adopted children need have no concern about the probable impact of this case on their familial security."

The order should be affirmed, with costs.

MIKOLL, J. (dissenting). I respectfully dissent.

The purpose of section 111-a of the Domestic Relations Law is to enable persons served under it to present evidence to the court relevant to the best interests of the child (Domestic Relations Law, § 111-a, subd 3). The legislation was enacted in answer to the decision of *Stanley v Illinois* (405 US 645) which recognized the interests of putative fathers in retaining custody of their children. The courts of this State have interpreted *Stanley* as requiring that notice and an opportunity to be heard to be afforded an unwed father before his parental rights could be terminated (see, e.g., *Matter of Malpica-Orsini*, 36 NY2d 568, app dsmd *sub nom. Orsini v Blasi*, 423 US 1042).

In the instant case, the Family Court held that petitioner did not fall within the categories of putative fathers enumerated in section 111-a of the Domestic Relations Law and, therefore, was not entitled to the notice prescribed by it. Under section 111-a, a notice of adoption proceedings would be required to be served on "any person who has timely filed an unrevoked notice of intent to claim paternity" (Domestic Relations Law, § 111-a, subd 2, par [c]). Here, the petitioner did not merely indicate an intent to claim paternity, but, he has formally acknowledged his paternity in a judicial proceeding by filing a petition pursuant to section 522 of the Family Court Act. The reading given the statute by the Family Court was, in my opinion, too literal. Admittedly, the petitioner did not file a notice of intent to claim paternity. He went considerably further. He was certainly a readily identifiable person under the spirit and intent of the statute. His status was terminated in

these proceedings in a manner at odds with the intent of the statute and in a manner inconsistent with due process.

The actions of the Family Court are difficult to fathom. The Judge who was hearing the adoption proceeding had also signed the show cause order to change the venue of the paternity proceeding to his county. He knew then that petitioner was acknowledging paternity of the child whose adoption was then pending before him. Under such circumstances, petitioner should have been notified of the pending adoption proceedings and allowed to intervene.

I conclude that the adoption order should be vacated and a proceeding held to determine petitioner's status as the natural father and, if so adjudicated, he should be allowed access to the records of the adoption proceeding.

SWEENEY, KANE and MAIN, JJ., concur with GREEN-BLOTT, J. P.; MIKOLL, J., dissents and votes to vacate the order in a separate opinion.

Order affirmed, with costs.