OPINION OF THE COURT
Bertram R. Gelfand, S.
This is an application for the private placement adoption of an eight-year-old infant by her maternal grandparents. Petitioners contend that based upon the lack of relationship and contact of the putative father with the child his consent to the application is not required, nor is he a person entitled to notice of the adoption pursuant to section 111-a of the Domestic Relations Law. Petitioners rely on the recently enacted amendments to subdivision 1 of section 111 of the Domestic Relations Law as the basis for determining that the consent of the putative father to the adoption is not required (L 1980, ch 575). If petitioners are correct then under present New York law, no service of process or notice need be made on the putative father by a “John Doe” publication or otherwise (see Matter of Cecilie Ann T., 101 Misc 2d 472).
The infant was born on October 5, 1972. Her mother is now deceased having died on July 13, 1980. Petitioners, and the natural mother in an affidavit executed prior to her death, both indicated that the infant was given to peti *771 tioners by her mother immediately after birth. An agreement of adoption signed by the natural mother has been filed with the court. This agreement, if properly executed, would constitute the mother’s consent. Unfortunately, the acknowledgment of the mother’s signature on the agreement was defective, and she died before the defect could be cured. At this juncture, the maternal grandmother stands as the appointed guardian of the child’s person with limited letters for the sole purpose of consenting to the adoption. This designation was made after the death of the natural mother, left no known person with authority to consent to the adoption, and the child remained in the continued custody of petitioners.
It has been established that the child’s mother was never married. Prior to her death, the mother stated in an affidavit that she had no idea to the identity of the child’s father since she was under the influence of drugs at the time of conception. She further stated that since the child’s birth, no one has ever come forward and held himself out as the father of the child. The veracity of the mother’s denial of knowledge of the identity of the child’s father is supported by other evidence as to the vocation adopted by the mother to support her drug habit. No one is named as the father on the child’s birth certificate.
Petitioners stated that they alone have provided for all the child’s needs since her birth. In the eight years that the child has lived with them, no one has ever come forward claiming to be her father nor acted in any way consistent with, or even remotely suggestive of that status.
The recently enacted amendments to subdivision 1 of section 111 of the Domestic Relations Law codify those circumstances in which the consent of the father of a non-marital child is required for the adoption of that child. In order for such consent to be a prerequisite to the approval of the adoption, the father must have met certain specific criteria delineated in two categories in the statute. One category applies to children placed for adoption prior to the age of six months, the other to those children placed after the age of six months. Paragraph (d) of subdivision 1 sets forth the requirements that are applicable to those *772 cases in which the child has been “placed” for adoption subsequent to having attained the age of six months. Paragraph (e) of subdivision 1 sets forth the requirements which such nonmarital father must meet where the child has been “placed” for adoption prior to having attained the age of six months. Implicit in subdivision 1 of section 111 is the conclusion that a nonmarital father who has not met the criteria set forth in either paragraph (d) or paragraph (e) is not a necessary party to the adoption proceeding.
The date a child is “placed for adoption” is usually a matter of clear record in agency adoption cases. In many private placement cases the date of placement for adoption is likewise easily ascertained. However, in many real life situations the assumption of custody, and that custody being for the purpose of adoption, are not always simultaneous events. When not simultaneous, the moment when adoption becomes the purpose of the parties having custody, and the intent of those who have given custody, is not always clearly discernible. In the instant case, the proof does not lend itself to a definitive conclusion as to the exact time that the custody of the infant with the petitioners was for the definitive purpose of adoption. The evidence indicates that immediately after the birth of the child, her mother “gave” custody of the child to the child’s maternal grandparents because she was unable to raise her. The specific point at which this eight-year custody that spans the child’s entire life was transformed to a “placement” of the child for adoption is unclear, nor can it be concluded, that it is of controlling significance in this case. Clearly, there arrived a point at which the petitioners’ custody of the infant acquired the characteristics of a placement for adoption. This is evidenced by the events establishing an effort by the mother to consent to such application. It appears that the untimely death of the mother aborted the conclusion of these efforts.
The obvious intent of the Legislature in the enactment of the amendments to subdivision 1 of section 111 of the Domestic Relations Law was to relieve the adoptive process of the necessity of joining as parties to such proceedings nonmarital fathers who have failed to have such parental involvement with the child so as to fall within the broad *773 perimeters of the United States Supreme Court’s reference to the manifestation of a “significant paternal interest” as set forth in Caban v Mohammed (441 US 380, 394). The statute is clearly intended to cover all nonmarital fathers. It cannot reasonably be concluded that under any circumstances the Legislature intended to create three categories of nonmarital fathers, one dealing with a child placed for adoption when the child was under six months of age, a second dealing with a child placed for adoption over the age of six months, and a third category that is totally omitted from the statute because the date of placement cannot be firmly established.
The applicable statute is clearly a response to the problems presented when the apparent constitutional mandate of Caban v Mohammed (supra) is attempted to be applied in the countless cases where the putative father is unknown or his contact with the child ended at the moment of conception or not significantly thereafter. Accordingly, consideration must be given to Caban in viewing the Legislature’s intent. Support for the Legislature’s determination to eliminate from the adoptive process all nonmarital fathers who have not attained the “significant paternal interest” referred to is found in the following language from the case (supra, p 392): “Even if the special difficulties attendant upon locating and identifying unwed fathers at birth would justify a legislative distinction between mothers and fathers of newborns, these difficulties need not persist past infancy * * * In those cases where the father never has come forward to participate in the rearing of his child, nothing in the Equal Protection Clause precludes the State from withholding from him the privilege of vetoing the adoption of that child.”
Under the facts of the instant case, the intent of the Legislature can best be carried out by first assuming that the child was “placed” for adoption subsequent to the age of six months and endeavoring to see if the criteria set forth in paragraph (d) are present and then assuming that the child was placed for adoption prior to attaining the age of six months and determining if the criteria set forth in paragraph (e) are present. By so proceeding, the *774 nonmarital father is being given the benefit of the presumption which may be most favorable to him.
Applying either criteria to the facts of the instant case, it is clearly concluded that under the existing statute the consent of the nonmarital father to the instant adoption is not required. He does not come within the ambit of any one of the requirements set forth in either paragraph. It is further concluded that under the facts here established the nonmarital father of the infant is not even entitled to “notice” of the adoption that is set forth under the provisions in section 111-a of the Domestic Relations Law, since he does not meet any of specifically enumerated criteria incorporated in that section relative to notice being required to be served upon a putative father.
In reaching this determination, the court is cognizant of the opinion of Acting Surrogate Delin of Nassau County in Matter of Female F. D. (105 Misc 2d 866) in which he found section 111 (subd 1, par [e]) of the Domestic Relations Law to be unconstitutional as applied to the facts in that case (see, also, Matter of Michael F. C., NYLJ, Nov. 12, 1980, p 12, col 5). In that matter, the putative father wished to marry the child’s mother and was thwarted in his attempts to establish a relationship with the mother and the child. The court found that the father had satisfied some, but not all of the requirements that would mandate his consent to the application pursuant to section 111 (subd 1, par [e]) of the Domestic Relations Law. This led to a holding that section 111 (subd 1, par [e]) was unconstitutional as applied to the circumstances of that case.
Every case has its own footprints. If this were not a fact the administration of justice could indeed pass from the efforts of man to do justice to the impersonality of the computer. It is accordingly concluded that the finding by the trial court of a constitutionally offensive result when the statute was applied to the facts in Matter of Female F. D. (supra) does not mandate that conclusion in this case. The strong presumption of constitutionality which attaches to all legislative enactments in the absence of a valid challenge thereto (Cook v City of Binghamton, 48 NY2d 323, 330; Hotel Dorset Co. v Trust for Cultural Resources of City *775 of N. Y., 46 NY2d 358, 370; Matter of Malpica-Orsini, 36 NY2d 568, 570; Wasmuth v Allen, 14 NY2d 391, 397; Defiance Milk Prods. Co. v Du Mond, 309 NY 537) permits the disposition of the instant matter within the framework of the statute. On the balance of .the proof, the court is satisfied that the petitioners are proper parties to attain the legal status of parents of the infant and it is in the best interest of said infant to grant the application.
The instant application being granted, the limited letters of guardianship of the infant heretofore issued by this court are sealed with the adoption file.