OPINION OF THE COURT
Bertram R. Gelfand, J.
In this agency adoption proceeding, there is presented a preliminary question as to the necessity for the consent of the putative father of the infant to the granting of the application. Petitioners seek a determination that the putative father is not a necessary party to the proceeding as a result of his failure to satisfy the criteria set forth in section 111 (subd 1, par [d]) of the Domestic Relations Law, or in the alternative, on the ground of abandonment (Domestic Relations Law, § 111, subd 2, par [a]). Petitioners further contend that he is not a person entitled to “notice” pursuant to the provisions of section 111-a (see Matter of Jessica XX, 77 AD2d 381, affd 54 NY2d 417; Matter of Carmen Lydia S., 106 Misc 2d 770; Matter of Sally Janet R., NYLJ, Feb. 9, 1981, p 13, col 6; see, also, Matter of Marilyn H., 106 Misc 2d 972, 978).
The infant was born on December 5, 1979 in Queens County. The certificate of birth does not state the name of the child’s father. The natural mother surrendered the custody and guardianship of the infant to the Commissioner of Social Services of the City of New York on August 22, 1980.
*905 The agency’s records indicate that at the time the natural mother executed her surrender, she also executed an affidavit in which she stated that she refused to reveal the identity of the putative father. The agency’s records indicate that the putative father never lived with the natural mother of the infant, nor did he ever visit or communicate with the child or the agency. Moreover, the putative father has never contributed to the maintenance and support of the infant, nor has he ever sent any cards, presents, or anything else of value to the child. The agency’s records also indicate that no person has ever come forward holding himself out as the father of the child nor has anyone ever contacted it claiming, or even suggesting the possession of such status. No one has ever been adjudicated the father of this child, nor has anyone ever registered as such with the putative father registry.
The time has come to address the problem in adoptions of the putative father who is known to the surrendering natural mother but whose identity she refuses to disclose. The adamant refusal of the mother of a nonmarital child to disclose the identity of the child’s father, even when it is known to her, is far from an unusual phenomenon. Even in the light of the escalated status of putative fathers as a result of Caban v Mohammed (441 US 380) and the legislation flowing therefrom, this circumstance does not present an insurmountable obstacle to the conclusion of an adoption. The quandary presented by the refusal of a mother placing a nonmarital child for adoption to disclose the identity of the child’s father must be viewed with a sensitivity to the fact that there is no feasible judicial process by which a mother surrendering her child for adoption can be compelled to disclose such information. To bring such a person before the court and direct them to disclose the information they may have as to the identity of the father under the threat of punishment for contempt is of doubtful legal validity and is even less logical. The ultimate impact of embarking on such an ill-advised course, among its other unfortunate ramifications, would be to create a chilling effect on mothers placing children for adoption through legitimate channels.
*906 To refuse to process the adoption within the framework of the statutes based upon such information as to the natural father, or lack of it, as is available, is imposing a penalty not on the mother who chooses not to reveal the information, but rather upon the innocent and defenseless child. Viewing the problem in the light most favorable to the unknown putative father, his relationship and interest in this child must be judged by his absence of affirmative action in the two and one-half years that have elapsed since the infant’s birth to disclose his identity as the father, and involve himself in the child’s welfare without regard to the fact that if his identity were known, affirmative action to stimulate this course would be appropriate.
The administration of justice involves a delicate balancing of conflicting equities. On one hand, stands the best interest of a defenseless infant whose only known parent, the mother, has opted to surrender her parental rights and responsibilities. On the other hand, stands the possible parental rights of a putative father who is not involved in the child’s life in any way past conception. In balancing conflicting private rights (in contrast to the balancing of the rights of the sovereign against private rights that were recently before the United States Supreme Court in Santosky v Kramer, _US_, 50 USLW 4333) the respective rights must be viewed by the law in a context of reasonable reality and not constrained by relatively remote possibilities that are divorced from reasonable probability. Concededly, it is possible that in some relatively finite number of cases in which a putative father has shown no interest in his child he has not done so because the mother has not made him aware of his achievement and that had she done so, he would be an attentive and devoted father. While concededly, many of the fleeting impregnators are unaware of their achievements, a relatively small, if not infinitesimal number of them, would come forward if they were privy to such information. It is reasonable to assume from experience, that the number of cases in which the putative father is not exercising parental concern for a nonmarital child being given up by the mother for adoption only because he is unaware of the child’s existence are not sufficient in number to thwart the interest of the defense *907 less child in being adopted. To embrace such a course would be to penalize the innocent child for the intransigence of a disinterested mother. It is accordingly determined that the application move forward applying the applicable statutes to the anonymous father based on the record as it exists.
It should be noted that it is doubtful that this concept should be extended to those cases in which the natural mother is a petitioner with her present spouse. In those cases the leverage of the mother’s interest in concluding the application makes feasible the preferred course of requiring that the putative father be disclosed and given his day in court prior to his parental rights being extinguished (see Santosky v Kramer, supra).
The consent of the putative father of an infant placed for adoption after the age of six months is not required unless he satisfies the criteria set forth in section 111 (subd 1, par [d]) of the Domestic Relations Law. In the instant matter, it has been established by clear and convincing evidence (see Santosky v Kramer, supra) that the putative father has failed to satisfy any of the statutory criteria which would give him a status herein. It is accordingly concluded that under the facts presented in this matter, the consent of the putative father is not required to the granting of the adoption (Domestic Relations Law, § 111, subd 1, par [d]; Matter of Carmen Lydia S., 106 Misc 2d 770, supra; Matter of Sally Janet R., NYLJ, Feb. 9, 1981, p 13, col 6, supra).
It further appears on the proof that in the alternative, a conclusion is justified that pursuant to section 111 (subd 2, par [a]) of the Domestic Relations Law, the consent of the putative father to the application is not required on the ground of abandonment. Abandonment, pursuant to section 111 (subd 2, par [a]) has been defined as “such conduct on the part of a parent as evinces a purposeful ridding of parental obligations and the foregoing of parental rights — a withholding of interest, presence, affection, care and support” (Matter of Corey L v Martin L, 45 NY2d 383, 391; see, also, Matter of Susan W. v Talbot G., 34 NY2d 76; Matter of Maxwell, 4 NY2d 429). It appears from the record in this matter that the course of conduct of the putative father for the child’s entire life cannot be construed as being indicative of parental concern or interest let alone *908 the exercise of parental responsibility. Throughout the life of this child, the putative father has failed to indicate even a- scintilla of interest in him. It is accordingly also concluded that the putative father’s consent is not required to the granting of the application on the ground of abandonment (Domestic Relations Law, § 111, subd 2, par [a]).
Furthermore, it is concluded that the putative father does not satisfy any of the criteria set forth in section 111-a relative to the necessity for “notice” of an adoption proceeding. Accordingly, under the facts presented in this matter, the service of process or “notice” upon the putative father is not required (Domestic Relations Law, § 111, subd 1, par [d]; § 111-a).
The petitioning adoptive parents are directed to appear before this court in room 406 on May 13,1982 at 10:30 a.m. for such further proceedings as are appropriate to complete the application.