In the Matter of ROBERT O., Appellant, v RUSSELL K. et al., Respondents.

Second Department, January 13, 1992

APPEARANCES OF COUNSEL

*Paul L. Brozdowski* for appellant.

*Frederick J. Magovern (Constance F. Roland* of counsel), for respondents.

*John F. Middlemiss, Jr. (John Francis Phelan* of counsel), for *Law Guardian*.

## OPINION OF THE COURT

LAWRENCE J.

On this appeal, we must determine what are the rights of the alleged biological father, who was not aware of the mother's pregnancy until 17 months after the birth of the child and until 10 months after an adoption of the child was finalized. He argues that he was unconstitutionally deprived of due process when he was not notified of the adoption proceeding, or given the opportunity to oppose the adoption. Essentially, he contends that his status as the biological father in itself constitutionally entitled him to notice of the child's birth and an opportunity to assert paternity and manifest an interest in assuming the responsibilities of parenthood. He claims that the adoption should be vacated because of the lack of any notice to him and on the further ground of alleged fraudulent concealment. We find that the Family Court properly declined to vacate the adoption on these grounds.

The petitioner, Robert O., and the mother, Carol A., met in 1982. In December 1987 they became engaged and Robert moved into Carol's house. During the next two months, however, they disagreed over when they should marry. Thus, according to Carol, when she discovered she was pregnant, she declined to tell Robert. She was afraid that he would conclude she became pregnant in order to pressure him into marriage. Because of this fear, in February 1988, she broke off the engagement and Robert moved out, unaware of the pregnancy.

In March 1988 Carol approached the respondents about adopting the child; they readily agreed. The child was born on October 1, 1988, but the birth certificate omitted the father's identity. When Carol was discharged from the hospital, she

handed the child over to the respondents. The respondents deny that they were ever told the identity of the child's biological father.

On December 9, 1988, Carol executed a judicial consent to the adoption and signed a statement which indicated that, to her knowledge, there was no one in the class of persons, enumerated in Domestic Relations Law § 111-a (2), who was entitled to notice, or whose consent was required under Domestic Relations Law § 111 (1) (e) (which has since been declared unconstitutional on grounds not involved here [see, *Matter of Raquel Marie X.,* 76 NY2d 387]). During the adoption proceeding, Carol was never expressly asked whether she knew the identity of the biological father. The adoption was finalized in May 1989.

Between March 1988 and January 1990 Robert made no attempt whatever to contact Carol, even though she remained at the same residence and apparently did nothing to secrete herself. In January 1990 Carol and Robert reconciled, but Carol did not immediately tell Robert about the adoption. In March 1990 she finally told Robert about the child's birth and adoption. Upon learning this information, Robert purportedly "went nuts" and "right away wanted to talk to the [respondents]". He subsequently reimbursed Carol for those medical expenses from the pregnancy and the birth not covered by insurance, filed an application with the Putative Father Registry, and commenced this proceeding to vacate the adoption. Robert and Carol also became engaged again, and, we are now informed, have since married.

On appeal, Robert argues that his status as the biological father, in itself, constitutionally entitled him to notice of the adoption proceedings and an opportunity to assert his parental interest. This argument, however, misconstrues the nature of a constitutionally protected interest, as it has been recognized by the courts and by statutes.

It is fundamental that "the relationship between parent and child is a constitutionally protected one" *(Matter of Raquel Marie X.,* 76 NY2d 387, 398, *supra).* Moreover, constitutional protections extend to unwed fathers in certain circumstances. Thus, the United States Supreme Court has held that a statute that assumed all unwed fathers were unfit violated

both the Equal Protection Clause and the Due Process Clause, and, therefore, a hearing was required before the State could terminate their parental rights *(see, Stanley v Illinois,* 405 US 645, 651). In addition, the Supreme Court has also held that a statute which denied all unwed fathers the right to veto adoptions, while granting that right to unwed mothers, violated the Equal Protection Clause *(see, Caban v Mohammed,* 441 US 380).

These cases, however, clearly emphasize that the biological connection alone does not entitle the unwed father's interest to constitutional protection. For example, in *Caban v Mohammed (supra,* at 392) the court commented that "nothing in the Equal Protection Clause precludes the State from withholding * * * the privilege of vetoing" adoptions from those unwed fathers who have never "come forward to participate in the rearing" of the children. This approach has been reaffirmed by cases addressing the constitutionality of New York statutes concerning the rights of unwed fathers.

Following *Caban v Mohammed (supra),* New York enacted Domestic Relations Law § 111-a, which, *inter alia,* required that unwed fathers be given notice of adoption proceedings where the father had promptly manifested a desire to pursue his parental interest.[1] In upholding this statute, the United States Supreme Court observed that the unwed father's "in-

---

1. Domestic Relations Law § 111-a (2) requires that notice of adoption proceedings be given to:

"(a) any person adjudicated by a court in this state to be the father of the child;

"(b) any person adjudicated by a court of another state or territory of the United States to be the father of the child * * *

"(c) any person who has timely filed an unrevoked notice of intent to claim paternity of the child * * *

"(d) any person who is recorded on the child's birth certificate as the child's father;

"(e) any person who is openly living with the child and the child's mother at the time the proceeding is initiated and who is holding himself out to be the child's father;

"(f) any person who has been identified as the child's father by the mother in a written, sworn statement;

"(g) any person who was married to the child's mother within six months subsequent to the birth of the child and prior to the execution of a surrender instrument or the initiation of a proceeding pursuant to section three hundred eighty-four-b of the social services law; and

"(h) any person who has filed with the putative father registry an instrument acknowledging paternity of the child".

terest in personal contact with his child" does not acquire "substantial protection under the Due Process Clause" *(Lehr v Robertson,* 463 US 248, 261) until he "demonstrates a full commitment to the responsibilities of parenthood by 'com[ing] forward to participate in the rearing of his child' " *(Lehr v Robertson, supra,* at 261, quoting *Caban v Mohammed,* 441 US 380, 392, *supra).* While the biological connection allows the father the opportunity to develop a relationship with his children, if he fails to grasp that opportunity "the Federal Constitution will not automatically compel a State to listen to his opinion of where the child's best interests lie" *(Lehr v Robertson, supra,* at 262).

New York also enacted Domestic Relations Law § 111 (1) (e), which in substance granted an unwed father the right to oppose an adoption, but only in certain enumerated circumstances which were thought to indicate that he had successfully created a substantial and meaningful relationship with the child.[2] In *Matter of Raquel Marie X.* (76 NY2d 387, *supra)* the Court of Appeals found unconstitutional clause (i) of Domestic Relations Law § 111 (1) (e), which conditioned the unwed father's right to oppose the adoption upon his living with the mother for six months before the child's placement for adoption. However, while declaring Domestic Relations Law § 111 (1) (e) unconstitutional, because clause (i) did not further the State's interest or sufficiently protect the unwed father's interest, the court affirmed that the State could "deny a right of consent to all unwed fathers who do not come forward to immediately assume their parental responsibilities" and could "prescribe conditions for determining whether the unwed father's manifestation of interest in his child is

---

2. Domestic Relations Law § 111 (1) (e) states that consent to an adoption is required by any unmarried father who has: "(i) * * * openly lived with the child or the child's mother for a continuous period of six months immediately preceding the placement of the child for adoption; and (ii) * * * openly held himself out to be the father of such child during such period; and (iii) * * * paid a fair and reasonable sum, in accordance with his means, for the medical, hospital and nursing expenses incurred in connection with the mother's pregnancy or with the birth of the child."

sufficiently prompt and substantial to require full constitutional protection" *(Matter of Raquel Marie X., 76 NY2d 387, 404, supra)*. Adopting the rationale of prior cases, the court explained: "The protected interest [of the unwed father] is not established simply by biology. The unwed father's protected interest requires both a biological connection and full parental responsibility; he must both be a father and behave like one * * * When an unwed father promptly commits himself to custody—signifying 'provision for the physical and emotional needs of children, provision of guidance and direction to children, and living with children on a day-to-day basis' * * * in adoption proceedings by strangers he is entitled to the constitutional due process and equal protection guarantees accorded other parents before his rights are terminated" *(Matter of Raquel Marie X., supra,* at 401, quoting Buchanan, *The Constitutional Rights of Unwed Fathers Before and After Lehr v Robertson,* 45 Ohio St LJ 313, 350 [1984]).

These cases compel the conclusion that there is no merit to the petitioner's claim that he was deprived of his constitutional rights. There is no question that Robert never developed a custodial relationship with the child. Thus, Robert cannot now pursue his parental interest at this late stage. Indeed, without the requirement that the unwed father manifest his interest promptly, parties to an adoption proceeding would have no assurance that an adoption was permanent. Such uncertainty would undermine the State's recognized interest in facilitating sure and speedy adoptions and in providing permanent, stable homes for adopted children *(see, Matter of Raquel Marie X., supra,* at 403-404; *Matter of Jessica XX.,* 54 NY2d 417, 428; *Matter of John E. v Doe,* 164 AD2d 375, 382).

We find no merit to Robert's claim of fraudulent concealment. There is no evidence in the record of any act on Carol's part after Robert moved from her home, to conceal the pregnancy or the birth of the child. Moreover, Carol was not required to disclose the identity of the biological father during the adoption proceeding. It is well settled that a "natural mother ha[s] no obligation to * * * volunteer any information with respect to [the father]" *(Matter of Jessica XX., supra,* at

427; *see also, Matter of Christopher L.,* 113 Misc 2d 904). Thus, the evidence establishes that no fraudulent concealment occurred.

THOMPSON, J. P., BALLETTA and O'BRIEN, JJ., concur.

Ordered that the order is affirmed, with one bill of costs.