*1087 OPINION OF THE COURT
Robert G. Main, Jr., J.
The Mohawk Nation, in general, and the St. Regis Mohawk Tribe, in particular, have a long and storied history. Among many other things, this has resulted in the enactment of an express state legislative provision creating the St. Regis Mohawk Tribal Police on the St. Regis Mohawk Reservation at Akwesasne, New York. The provision is codified at Indian Law § 114. An interpretation of the statute’s jurisdictional provisions, as they relate to the facts and circumstances of the instant criminal prosecution, is the sole issue before this court.
Defendant stands indicted in this matter for aggravated driving while intoxicated, driving while intoxicated, and speed not reasonable and prudent. The first two counts are felonies, and the third is a traffic offense. By a stipulation in lieu of motions, the parties agreed that the threshold issue of the jurisdictional provisions of Indian Law § 114 would be considered by this court prior to any other judicial determination respecting this matter. The court approved the stipulation, directed the submission of memoranda of law by the parties, and heard oral argument on this singular issue.
The court has thoroughly reviewed the memoranda of law, considered the oral arguments of the parties, and conducted its own research. Curiously, this is an issue of first impression.
The Facts
The parties agree upon certain fundamental facts. As far as pertinent to this determination, the parties agree that the St. Regis Mohawk Tribal Police were dispatched to a motor vehicle accident on St. Regis Road in the Town of Bombay in Franklin County. In local parlance, the traffic accident occurred in what is locally called the “Hogansburg Triangle,” a geographic area that is subject to certain Native American land claims. The parties do not controvert that the accident scene to which the St. Regis Mohawk Tribal Police responded was outside the boundaries of the St. Regis Mohawk Reservation. Neither party contended that the accident scene, and subsequent arrest at the scene, was within 100 yards of the boundary of the St. Regis Mohawk Reservation (see CPL 140.10 [2] [a]). Personal injury was apparent; an ambulance was called to the scene. Based upon the St. Regis Mohawk Tribal Police officers’ observations, an arrest occurred for felony charges leading to the indictment.
*1088 Statutory Construction
The court’s review and analysis is governed by due deference to the separation of powers between the branches of state government and its obligation to strictly construe creatures of statute such as the St. Regis Mohawk Tribal Police.
Basic and axiomatic tenets of statutory construction require that the language of the legislation be carefully considered and given its plain and obvious meaning wherever possible. Put another way, where the statutory language is unequivocal, and the intent is clear, the court must accord such legislative language its obvious intent. “It is a general rule of statutory construction, however, that courts are obligated to interpret a statute to effect the intent of the Legislature according to the plain words used by the Legislature. Courts are not to legislate under the guise of interpretation” (People v Gabbidon, 10 Misc 3d 728, 730 [2005] [citation omitted]).
In Matter of M.B. (6 NY3d 437, 447 [2006]), the Court of Appeals clarified this undertaking.
“[The Court’s] task — as it is in every case involving statutory interpretation — is to ascertain the legislative intent and construe the pertinent statutes to effectuate that intent.
“We begin with the statutory text, which is the clearest indicator of legislative purpose (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]). If the ‘language ... is clear and unambiguous, courts must give effect to its plain meaning’ (State of New York v Patricia II., 6 NY3d 160, 162 [2006]), quoting Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington, 97 NY2d 86, 91 [2001]). When the terms of related statutes are involved, as is the case here, they must be analyzed in context and in a manner that ‘harmonize[s] the related provisions . . . [and] renders them compatible’ (Tall Trees, 97 NY2d at 91).”
In Matter of New York County Lawyers’ Assn. v Bloomberg (19 NY3d 712, 721 [2012]), the Court of Appeals provides additional guidance.
“ ‘It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature’ (Patrolmen’s Benevolent Assn. of City of N.Y. v City of New York, 41 NY2d 205, 208 *1089 [1976]; see also Matter of M.B., 6 NY3d 437, 447 [2006]). To that end, in our present interpretation of County Law § 722, we must look first to the statutory text, which is ‘the clearest indicator of legislative intent’ (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]). We are also guided in our analysis by the familiar principle ‘that a statute . . . must be construed as a whole and that its various sections must be considered together and with reference to each other’ (People v Mobil Oil Corp., 48 NY2d 192, 199 [1979]).”
The foregoing guidance from case law is also consistent with the provisions of McKinney’s Consolidated Laws of NY, Book 1, Statutes § 94, which states that “[t]he legislative intent is to be ascertained from the words and language used, and the statutory language is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction.”
Case law addressing the obligation to strictly construe entities and rights created by statute that did not exist at common law is legion. Somewhat anachronistically, such entities are referred to as “creatures of statute.” This principle has been long established in our law. Examples include, but are not limited to: “Adoption is a creature of statute, and, as such, requires strict observance of the statutory requirements” (Matter of Jessica XX, 77 AD2d 381, 383 [3d Dept 1980], affd 54 NY2d 417 [1981], affd sub nom. Lehr v Robertson, 463 US 248 [1983]); “A summary proceeding is a creature of statute and there must be strict adherence to statutory requirement” (PAK Realty Assoc. v RE/MAX Universal, 157 Misc 2d 985, 986 [Civ Ct, Queens County 1993]); “A mechanic’s lien is a creature of statute. The provisions of the Lien Law must be strictly complied with” (Mineola Rd. Oil Corp. v Walsh, 137 NYS2d 342, 343 [Sup Ct, Suffolk County 1954]); “An action alleging wrongful death, unknown at common law, is a creature of statute requiring strict adherence to the four corners of the legislation” (Langan v St. Vincent’s Hosp. of N.Y., 25 AD3d 90, 92 [2d Dept 2005]); “As an initial matter, the workers’ compensation system is the creature of a comprehensive statutory scheme. Thus, the terms of its governing statutes, including the lien and offset provisions at issue here, should be strictly construed in light of their legislative purpose” (Matter of Shutter v Philips Display Components Co., 90 NY2d 703, 707-708 [1997] [citations omitted]);
*1090 “The office of commissioner of deeds is entirely the creature of the statute. Its creation, its powers, its duties, its compensation, and its term is wholly the work of the legislature. . . .
“Corporations are the creatures of legislation. They have no powers except what are conferred upon them by their charter. Their charters are the breath of their existence, they are what give them life, and they must live and act according to the rule laid down for them in those creative instruments, and other rules laid down by the power which created them. The grant of power, too, by such acts is liable and subjected to a strict construction” (Parker v Baker, Clarke Ch 223, 7 NY Ch Ann 98 [Ch Ct 1840]).
As are the foregoing various and sundry entities detailed, the St. Regis Mohawk Tribal Police is, in fact, a creature of statute. Thus, the enabling legislation must be, and will be, strictly construed.
Arguments of Counsel
As previously noted, counsel submitted memoranda of law and were accorded a full opportunity to be heard at oral argument on the threshold jurisdictional issue before the court. Defense counsel and the Chief Assistant District Attorney were articulate in their arguments. This is an issue of first impression that is of some significance for the areas in New York State bordering the St. Regis Mohawk Reservation.
Defendant argues, in essence, that the statute creating the St. Regis Mohawk Tribal Police must be narrowly construed and strictly limits the police power of the St. Regis Mohawk Tribal Police. Put another way, the defense argued that, absent “hot pursuit,” the St. Regis Mohawk Tribal Police lack police powers outside of the St. Regis Mohawk Reservation rendering the instant arrest without authority and what should be deemed a nullity.
The People rely upon the “police officer” definition at Criminal Procedure Law § 1.20 (34) (u), read in conjunction with the arrest power provisions of Criminal Procedure Law § 140.10 (3). The People contend that those charged with “crimes” such as those charged in the first and second counts of the indictment are susceptible to arrest by officers of the St. Regis Mohawk Tribal Police as a consequence of the interplay of the cited subdivisions. Thus, the People ask the court to conclude that St. *1091 Regis Mohawk Tribal Police may arrest individuals for crimes committed outside the boundaries of the St. Regis Mohawk Reservation. The People do not address, and thereby effectively concede, the lack of jurisdiction relative to count three of the indictment which is not a crime but, rather, a traffic offense. Accordingly, the third count of the indictment must be dismissed.
As a footnote in their memorandum of law, the People reference a recent United States Court of Appeals decision in the Second Circuit which addressed Indian Law § 114.
“Under New York law, members of the [St. Regis Mohawk Police Department] had full authority to act as New York police officers within the boundaries of the St. Regis Reservation, see N.Y. Indian Law § 114(1), (2); N.Y. Crim. Proc. Law § 1.20(34)(u), but beyond the reservation they were without authority to ‘exercise the duties or functions of a police officer’ (subject to limited exceptions not relevant here), see N.Y. Indian Law § 114(8)” (United States v Wilson, 699 F3d 235, 239 [2d Cir 2012]).
The People accurately indicate that such ruling is not controlling precedent over this court. Nonetheless, the analysis is worthy of consideration and supports this court’s conclusions noted below.
Indian Law § 114
Current Indian Law § 114, enacted by the Laws of 2005 (ch 558), provides, in pertinent part, as follows:
“§ 114. St. Regis Mohawk tribal police “1. By notifying the superintendent of state police, the St. Regis Mohawk tribal council may establish a St. Regis Mohawk Tribe police department employing police officers appointed in accordance with this section. . . .
“2. Upon the application of the St. Regis Mohawk tribal council, the superintendent of state police may appoint any person as a police officer with all powers provided for in the criminal procedure law, except for those powers specifically excepted by this section, for the preservation of order and of the public peace, and the arrest of all persons committing offenses upon the St. Regis Mohawk tribal reservation. . . .
“8. A person appointed a police officer under this *1092 section shall only be permitted to exercise the duties or functions of a police officer within the county of Franklin, and within that county, only within the boundary of the St. Regis reservation-, except that such officer may follow a person for whom he or she has the authority to arrest on the reservation in continuous close pursuit, commencing on the reservation, in and. through any county of the state, and may arrest such person in any county in which the officer apprehends him or her.” (Emphasis added.)
The sponsor of the foregoing legislation was Senator Elizabeth O’Connor Little. The March 25, 2005, Introducer’s Memorandum in Support, submitted in accordance with Senate rule VI, § 1, states, in pertinent part:
“EXISTING LAW:
“There is currently no authority under existing law for the Mohawk tribal nation to create a police department that would be recognized under New York State law.
“JUSTIFICATION:
“The St. Regis Mohawk Reservation is home to approximately 8,000 people. Many cities, towns, and villages, of this size have chosen to create their own police force to supplement and enhance the level of police services that can be provided. Similarly, the creation of an indigenous police force on the St. Regis Mohawk Reservation can enhance security for its inhabitants. In addition, as the St. Regis Mohawk Reservation sits on the international border with Canada, creation of this indigenous St. Regis police force can enhance the security of our state and nation by providing added protection against terrorists entering the country illegally.” (Bill Jacket, L 2005, ch 558 at 3.)
Nothing in this history suggests an intent to expand the powers of the proposed police department beyond the boundaries of the indigenous community it was created to protect.
Analysis
As is required, the court must give a plain reading to Indian Law § 114 and strictly adhere to the statute’s language and the mandates of statutory construction. When so construed, the court is lead directly to the conclusion that the police authority of the St. Regis Mohawk Tribal Police is definitively limited to *1093 the County of Franklin and, further, to the St. Regis Mohawk Reservation. Such an interpretation of the statute “effectuate[s] the intent of the Legislature” (Matter of New York County Lawyers’ Assn. v Bloomberg, 19 NY3d 712, 721 [2012], supra).
St. Regis Mohawk Tribal Police officers are appointed by virtue of Indian Law § 114. For convenience, the court emphasized, above, certain language of the statute creating the St. Regis Mohawk Tribal Police and authorizing the employment of its police officers. The language is precise, narrow, and, presumably, carefully chosen. Tribal police officers are truly New York State police officers; they are not substandard in any respect. They have all the powers, within their jurisdiction, of any other New York State police officer. But the instrument of their creation, recognized by the clear language of Criminal Procedure Law § 1.20, limits their geographic reach, except in circumstances not present here, to the St. Regis Reservation in Franklin County. Tribal police officers may arrest all persons committing offenses on the St. Regis Mohawk Tribal Reservation. However, the enabling legislation expressly limits the exercise of such duties within the County of Franklin and “only within the boundary of the St. Regis reservation” (see Indian Law § 114 [8] [emphasis added]).
Aside from the lack of jurisdictional authority just addressed, the court finds no bad faith on the part of the St. Regis Mohawk Tribal Police in responding to the traffic accident in question. It is uncontroverted that a traffic accident had occurred involving personal injury. Ambulance transportation of the victim did result. The response to the accident scene by the St. Regis Mohawk Tribal Police in an obvious effort to promote general public safety in the immediate vicinity was appropriate. Given the boundaries of the St. Regis Reservation, the St. Regis Mohawk Tribal Police response to the accident scene in question was likely more immediate than the possible response of any other agency.
Nonetheless, whatever the response, it did not include the power to arrest. The People’s argument relies upon the definition at Criminal Procedure Law § 1.20 (34) (u) to their detriment. The amendment to that statute and the literal, verbatim language of the amended subdivision expressly includes “Indian police officers” but only “pursuant to section [114] of the Indian law.” This deliberate amendment compels the determination that the specific language of Indian Law § 114 controls and that the particular limitations contained in the statute pertain directly to the St. Regis Mohawk Tribal Police.
*1094 There is no reason to conclude that the legislature intended to do anything other than create a police force for the part of the Mohawk Nation situated on the St. Regis Reservation in Franklin County, New York, and to limit its jurisdiction. This intent is obvious and unequivocal in the court’s judgment. The statute must be interpreted to limit the police powers of the St. Regis Mohawk Tribal Police to the precise geographic boundaries specified. Only such a statutory interpretation can give the “clear and unambiguous” wording of Indian Law § 114 the necessary “effect to its plain meaning.” This interpretation of Indian Law § 114 and Criminal Procedure Law § 1.20 (34) (u) also “harmonize[s] the related provisions . . . [and] renders them compatible” (Matter of M.B., 6 NY3d at 447).
Based upon the foregoing facts, law, and analysis, the court is constrained to dismiss the indictment. The St. Regis Mohawk Tribal Police lack police powers outside of the St. Regis Mohawk Reservation. Here the St. Regis Mohawk Tribal Police arrested defendant without jurisdiction or authority such that the arrest is null and void.
Whether this result is good law or bad law is not for the court to discern. Whether any change in the law is called for remains within the sound discretion of the legislature. That does not, however, leave the People or the tribal police department without some remedy. The court can perceive no obstacle, under such circumstances, to the responding officers, suspecting the commission of a crime, seeking the assistance of sister agencies who could effect an arrest, even upon the sworn statements of the responding officers. They remain, most generally, citizens who are permitted, even called upon, to cooperate with law enforcement and provide statements of their observations. Alternatively, in some cases, they could be called before the grand jury, in a direct presentment, and give testimony of their observations. In these instances, they would simply be exercising the prerogatives of citizenship and not “the duties or functions of a police officer” (see Indian Law § 114 [8]).
In view of the decision reached herein, it is not necessary for the court to address the other issues raised in the parties’ stipulation in lieu of motions.
For the reasons set forth herein, it is ordered that the motion to dismiss the indictment pending against defendant, Amanda Herne, be, and the same hereby is, granted; and it is further ordered that the indictment pending against the defendant, Amanda Herne, be, and the same hereby is, dismissed; and it is *1095 further ordered that, pursuant to 22 NYCRR 200.40, defendant is advised (1) that the People have the right to take an appeal; (2) that the defendant has the right to retain counsel to represent her on the appeal or to respond to the appeal pro se; (3) that, if the defendant can show no financial ability to pay for the cost of counsel on appeal, the defendant may make application to the appellate court for assignment of counsel to respond to the appeal; and (4) that the defendant must provide the court and the defendant’s trial counsel with an address where she can be contacted should the People appeal the order of the court; and it is further ordered that the defendant’s counsel herein serve a copy of this decision and order upon the defendant and file an affidavit of the service thereof with the court.