OPINION OF THE COURT
 

 Titone, J.
 

 This appeal presents the question whether a workers’ compensation insurance carrier may invoke Workers’ Compensation Law § 29 (4) to offset its future compensation payments to a claimant, who was disabled in a work-related auto ac
 
 *706
 
 cident, by the amount that the claimant recovered in uninsured motorist benefits under an insurance policy she purchased. We conclude that, under this State’s Workers’ Compensation Law, the carrier may only offset its future payments by amounts recovered in an action against a third-party tortfeasor, and thus that the credit is unavailable in these circumstances.
 

 Claimant Charlotte Shutter was injured in a single car accident when the driver of the taxi she had hired to transport her to the airport for a business trip lost control of the vehicle. Because the taxi owner’s insurer disclaimed coverage, and the driver was uninsured, claimant filed a claim under the uninsured motorist provisions of her own automobile insurance policy, which had a coverage limit of $300,000. Claimant recovered $124,697.95 under this clause from her insurer after arbitration.
 

 Claimant also received workers’ compensation benefits from her employer, Philips Display Components Company, based upon her permanent and partial disability. The employer’s workers’ compensation insurance carrier sought to offset claimant’s future compensation payments by the amount she obtained under the uninsured motorist provisions of her policy.
 
 [1]
 
 The Workers’ Compensation Law Judge ruled that the carrier was not entitled to the offset because the uninsured motor vehicle coverage corresponded to "first party coverage paid for by the claimant,” which is not subject to offset under Workers’ Compensation Law § 29.
 

 The Workers’ Compensation Board reversed. The Board concluded that the employer was entitled to the offset because claimant’s insurance recovery "did not represent payment (in lieu of first party benefits) for basic economic loss, but instead represented payment for non-economic loss made” pursuant to Insurance Law § 3420 (f) (1) and (2), and thus did not fall within the exemption created by Workers’ Compensation Law § 29 (1-a).
 

 The Appellate Division affirmed. The Court concluded that the lien and offset remedies authorized by Workers’ Compensation Law § 29 were not "specifically limited to actions against third-party tortfeasors.” (235 AD2d 904, 905.) Thus, the Court concluded that the carrier could offset its future workers’ compensation benefit payments by the proceeds of claimant’s uninsured motorist claim. We now reverse.
 

 
 *707
 
 The employer’s workers’ compensation carrier seeks to offset its future compensation payments to claimant by the amount that claimant recovered in uninsured motorist benefits under her own insurance policy. The availability of the credit that the carrier seeks depends on our construction of Workers’ Compensation Law § 29. That statute provides that if an employee who is eligible for workers’ compensation benefits is injured "by the
 
 negligence or wrong of another
 
 not in the same employ, such injured employee * * * [may] pursue his remedy
 
 against such other
 
 subject to the provisions of this chapter” (Workers’ Compensation Law § 29 [1] [emphasis supplied]). The statute further allows that if the injured employee receives workers’ compensation benefits "and desire[s] to bring action
 
 against such other
 
 * * * the [workers’ compensation carrier] * * * shall have a lien on the proceeds of any recovery
 
 from such
 
 other” to the extent of the compensation provided
 
 (id.
 
 [emphasis supplied]). Similarly, the statute’s "offset provision” states that if the injured employee "proceed[s] against
 
 such other,
 
 [the workers’ compensation carrier] * * * shall contribute only the deficiency, if any, between the amount of the
 
 recovery against such other person
 
 actually collected, and the compensation provided * * * by this chapter” (Workers’ Compensation Law § 29 [4] [emphasis supplied]).
 

 The statute protects the compensation carrier’s subrogation rights by providing that if the injured employee takes compensation benefits, "but has failed to [timely] commence action against such other, * * * such failure shall operate as an assignment of the cause of action against such other to the * * * [workers’ compensation insurance carrier]” (Workers’ Compensation Law § 29 [2]), provided that the carrier complies with certain requirements
 
 (see, id.).
 
 Additionally, the statute requires the carrier’s consent or a court-issued compromise order for a claimant to settle a third-party action and continue to receive workers’ compensation payments (Workers’ Compensation Law § 29 [5];
 
 Matter of Johnson v Buffalo & Erie County Private Indus. Council,
 
 84 NY2d 13, 19).
 

 Here, the workers’ compensation carrier contends that the availability of the offset should not depend upon the pocket that finances the claimant’s recovery, and that "any” recovery by the claimant based on the work-related automobile accident should reduce the carrier’s payment obligation. We disagree with this expansive construction of the statute for several reasons.
 

 As an initial matter, the workers’ compensation system is the creature of a comprehensive statutory scheme
 
 (Matter of
 
 
 *708
 

 Granger v Urda,
 
 44 NY2d 91, 97). Thus, the terms of its governing statutes, including the lien and offset provisions at issue here, should be strictly construed in light of their legislative purpose
 
 (Matter of Jacob,
 
 86 NY2d 651, 657).
 

 Contrary to the carrier’s position, the Workers’ Compensation Law does not broadly authorize liens and offsets to be applied against "all” or "any” recoveries from others without regard for their source. Rather, Workers’ Compensation Law § 29 (4) specifically authorizes application of the lien or offset only against a specific category of recoveries — i.e., those constituting the proceeds of an action against "such other.” The term "such other” relates back to the earlier mention in section 29 (1) of the person whose "negligence or wrong” causes the claimant’s harm. Together, these terms indicate that the lien and offset tools may be applied only against recoveries from the third-party tortfeasors who are responsible for the claimant’s injuries.
 
 [2]
 
 Thus, under the statute’s plain terms, the workers’ compensation carrier is subrogated to the employee’s rights against the third party, indicating a legislative decision that the loss be borne by the wrongdoer.
 

 Here, the funds claimant recovered from her own insurance carrier tinder the uninsured motorist benefits endorsement were not recovered from the third-party tortfeasor. Thus, under a strict reading of the statute’s terms, the carrier is not entitled to a credit based on those proceeds.
 

 Our conclusion that the carrier may not enjoy a credit from uninsurance payments is buttressed by the fact that the statutory scheme requires vigilant preservation of the carrier’s subrogation rights in an "action” against a "third party” (Workers’ Compensation Law § 29 [2], [5]), but does not contemplate intervention by the carrier or mandate preservation of any similar subrogation right when the injured employee proceeds with a claim under her own insurance policy. Indeed, Workers’ Compensation Law § 30 provides, with exceptions not relevant here, that "[n]o benefits, savings or
 
 insurance
 
 of the injured employee, independent of the provisions of this chapter, shall be considered in determining the compensation or
 
 *709
 
 benefits to be paid under this chapter” (emphasis supplied). The carrier’s construction of Workers’ Compensation Law § 29 thus runs afoul of this prohibition without clear statutory authority or other satisfactory justification.
 

 The carrier nonetheless contends that the injured employee’s insurer steps into the shoes of the tortfeasor, such that recovery from the claimant’s uninsurance coverage should be deemed the equivalent of recovery from the negligent actor. We disagree. Where the claim is made against the injured worker’s uninsured motorist coverage, the recovery is predicated on that insurer’s contractual obligation to assume the risk of loss associated with an uninsured motorist on the insured’s behalf in exchange for the payment of premiums. Although liability will be measured by the damages caused by the tortfeasor, the insurer’s obligation to pay is not derived from any relationship with or duty owed to the tortfeasor
 
 (Commissioners of State Ins. Fund v Miller,
 
 4 AD2d 481;
 
 Hartford Acc. & Indem. Co. v Glickman,
 
 84 Misc 2d 33).
 
 [3]
 
 Additionally, the insurer’s payments do not discharge the tortfeasor’s liability. The fact that the insured is now obligated by statute to purchase $10,000 in underinsured motorist coverage does not require a different result, as the carrier contends, because it does not create a relationship between the tortfeasor and the injured worker’s insurance carrier that would render one the “alter ego” of the other
 
 (see, Commissioners of State Ins. Fund v Miller, 4
 
 AD2d 481, 482-483,
 
 supra).
 

 The carrier also argues that because the insurance proceeds here do not fall within the exemption from the lien and offset created by Workers’ Compensation Law § 29 (1-a), it follows that the lien and offset remedies are not barred. This argument misses the mark, however, because it presumes that the lien or offset is available in the first instance, which the carrier has failed to establish.
 

 In any event, section 29 (1-a) has no relevance here. Section 29 (1-a) exempts from a workers’ compensation lien "the proceeds of any recovery received pursuant to [Insurance Law § 5104 (a)]” which constitute compensation and/or medical
 
 *710
 
 benefits paid in lieu of first-party benefits.
 
 [4]
 
 In turn, Insurance Law § 5104 (a) governs the right of recovery in a serious personal injury action against another person who is "covered” within the meaning of the statute.
 
 [5]
 
 Given that exemption provisions apply by their terms only to a limited class of recoveries in third-party actions, they have no application to the proceeds of claims made against an insured’s own uninsured motorist benefits.
 

 Finally, by definition, uninsured motorist coverage compensates for "noneconomic” loss
 
 [6]
 
 and economic loss in excess of basic economic loss,
 
 [7]
 
 and shall not duplicate any element of basic economic loss (Insurance Law § 3420 [f] [1]). Workers’ compensation benefits by definition are limited to reimbursement for basic economic loss (Workers’ Compensation Law § 10
 
 et
 
 seq.;
 
 Matter of Granger v Urda,
 
 44 NY2d 91,
 
 supra),
 
 and they do "not provide an award for pain and suffering” (Minkowitz, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 64, Workers’ Compensation Law § 29, 1997 Pocket Part, at 37, 38). Thus, the unavailability of the offset here does not give the injured employee a double recovery for the same elements of loss.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to that Court, with directions to remand to the Workers’ Compensation Board for further proceedings in accordance with this opinion.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Order reversed, etc.
 

 [1]
 

 . The carrier did not attempt to assert a lien on the insurance proceeds pursuant to Workers’ Compensation Law § 29 (1).
 

 [2]
 

 . Thus, this State’s workers’ compensation lien and offset provisions are distinguishable from the legislation that some States have chosen to enact which either specifically address the availability of carrier liens or credits against the proceeds of uninsured or underinsured motorist claims (see,
 
 e.g.,
 
 Me Rev Stat Annot, tit 39-A, § 221 [3] [F]; NH Rev Stat Annot § 281-A: 13 [I]), or which fail to include language limiting the right of subrogation to tort recoveries (see,
 
 e.g.,
 
 SD Codified Laws § 62-4-39).
 

 [3]
 

 . The carrier contends that
 
 Glickman
 
 and
 
 Miller
 
 are no longer valuable precedent, given that they predate the enactment of the No-Fault Law. However, the carrier fails to direct us to any provision of that law that would invalidate the holdings of either of these cases.
 

 [4]
 

 . First-party benefits are defined as "payments to reimburse a person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle, less” certain deductions (Insurance Law § 5102 M).
 

 [5]
 

 . Section 29 (1-a) does not preclude placement of the lien on those recoveries received pursuant to Insurance Law § 5104 (b), which concerns "action[s] by or on behalf of a covered person, against a non-covered person.”
 

 [6]
 

 . Noneconomic loss is defined as "pain and suffering and similar non-monetary detriment” (Insurance Law § 5102 [c]).
 

 [7]
 

 . Basic economic loss generally refers to medical expenses, and lost earnings "for not more than three years from the date of the accident causing the injury,” up to a maximum statutory do.llar amount of $50,000 per person (Insurance Law § 5102 [a] [2]).