(March 21, 2002)

In the Matter of the Claim of Rose Arena, Respondent, v Crown Asphalt Company, Inc., et al., Appellants. Workers' Compensation Board, Respondent. [740 NYS2d 472] —Cardona, P.J. Appeal from a decision of the Workers' Compensation Board, filed March 1, 2000, as amended by decision filed February 5, 2001, which, inter alia, ruled that the workers' compensation carrier could not take an offset credit against the proceeds received by claimant from the settlement of a third-party action.

In July 1980, Thomas Arena (hereinafter decedent) sustained a left foot injury in the course of his employment with Crown Asphalt Company, Inc. (hereinafter the employer). Thereafter, a Workers' Compensation Law Judge (hereinafter WCLJ) awarded decedent workers' compensation benefits. In the course of his treatment and hospitalization for his injury, decedent suffered renal failure. Decedent's original claim was subsequently amended to include consequential renal failure.

Decedent and claimant, his wife, thereafter commenced a third-party medical malpractice action against decedent's treat-

ing physicians and hospital as a result of the consequential renal failure. Decedent sought damages for his disability, lost wages, medical expenses and pain and suffering. Claimant, derivatively, sought damages for loss of consortium and services. Initially, the employer's workers' compensation carrier refused to consent to a settlement, however, after decedent brought a petition seeking to compel consent, decedent and the carrier entered into a stipulation to which claimant was not a signatory. The stipulation, dated September 23, 1988, covered the carrier's use of the pending third-party recovery as a credit against its liability in decedent's workers' compensation claim. It also contained a provision limiting its offset credit for decedent's claim to the net recovery of $650,000 in the contemplated structured settlement. The stipulation also contained a provision indicating that the carrier was not waiving its right to take credit against any future claim by claimant for death benefits. Another provision indicated that the $650,000 credit for decedent's claim did not include the sum of $109,960, "which represents [claimant's] share of the malpractice settlement."

On September 27, 1988, the structured settlement was finalized wherein, inter alia, decedent and claimant received a joint payment of $133,484.76 and the carrier received $19,000 in satisfaction of its lien (reduced from the original amount of $115,000 by consent of the carrier). The settlement also included payments solely to decedent in the amount of $5,000 per month for life with guaranteed monthly payments to his estate until September 1, 1998 in the event of his death prior to that date. Decedent and claimant agreed that neither of them would bring any additional past, present or future claims, known or unknown, with respect to the third-party action, including a potential wrongful death action. In the general release form, also dated September 27, 1988, both decedent and claimant noted that the carrier reserved its rights for offset claims as set forth in the stipulation between the carrier and decedent. Subsequently, on February 17, 1989, the terms of the settlement and related stipulation were confirmed in decedent's workers' compensation matter. Based upon the stipulation, the WCLJ closed decedent's case on March 6, 1989. Claimant was not a party to that proceeding.

Decedent died on May 6, 1993, and claimant, in a separate proceeding, filed a claim for death benefits under Workers' Compensation Law § 16. The carrier, during the processing of that claim, raised the issue of credit against claimant's death benefits for amounts received in the settled third-party action.

In a July 29, 1997 decision, a panel of the Workers' Compensation Board found that the carrier was entitled to a credit against claimant's death benefit award and the record required development before a WCLJ as to the amount of the credit. However, the full Board later rescinded that decision and referred the matter back to the panel for reconsideration. In an amended decision, dated February 5, 2001, a Board panel found, inter alia, that the carrier was not entitled to any credit as against claimant's death benefits for either the $650,000 net recovery described in the stipulation nor the $109,960 identified in the stipulation as claimant's share of the settlement. The employer and the carrier (hereinafter collectively referred to as the carrier) appeal.

The availability of the credit sought by the carrier is contingent upon the application of Workers' Compensation Law § 29, which provides that if an employee who is eligible for workers' compensation benefits is injured "by the negligence or wrong of another * * *, such injured employee, or in case of death, his dependents, * * * [may] pursue his remedy against such other subject to the provisions of this chapter" (Workers' Compensation Law § 29 [1]; *see, Matter of Shutter v Philips Display Components Co.*, 90 NY2d 703, 706). Notably, "Workers' Compensation Law § 29 confers two separate rights on compensation carriers to obtain reimbursement from the proceeds of third-party recoveries: that of a lien against the recovery for the amount of benefits disbursed by a carrier * * *, and the right to offset a claimant's future compensation benefits by the amount of the claimant's net recovery in the third-party action * * *" (*Matter of Miller v Arrow Carriers Corp.*, 130 AD2d 279, 281 [citations omitted]). However, if a carrier or employer wishes to preserve their offset right when a claimant prevails in a third-party action, the carrier must specifically reserve such right plainly and unambiguously (*see, Matter of Whitcomb v Xerox Corp.*, 246 AD2d 947, 948; *Matter of Miller v Arrow Carriers Corp., supra* at 281) and any ambiguities will be construed against the carrier (*see, Matter of Angrisano v United Progress*, 114 AD2d 536, 537, *lv denied* 67 NY2d 607; *Matter of Hilton v Truss Sys.*, 82 AD2d 711, 712, *affd* 56 NY2d 877).

Thus, the first question to be resolved is whether, at the time of the settlement, the carrier unambiguously reserved its offset right against a future death benefit claim by claimant. The carrier asserts that it clearly did in the stipulation between itself and decedent in paragraph 8, by stating: "The carrier does not waive its right to raise the issue of a possible

credit in any future claim by the wife for death benefits under the Workers' Compensation Law." While that statement is clear, a question arises as to enforceability since claimant was not a signatory to the stipulation. It cannot be ignored that a future claim for death benefits is separate and distinct from the original workers' compensation claim (*see, Matter of Zechmann v Canisteo Volunteer Fire Dept.*, 85 NY2d 747, 751). Therefore, it was imperative that claimant be separately apprised of the carrier's reservation of rights inasmuch as the provision of such unambiguous notice "has the salutary effect of affording a claimant the opportunity to examine a proposed settlement from a proper perspective, for it enables him [or her] to weigh this offer against a potential loss of future compensation benefits" (*Matter of Hilton v Truss Sys.*, *supra* at 712; *see, Matter of Robinette v Meyer Sign Co.*, 43 AD2d 458, 461).

Here, while the stipulation, standing alone, does not establish that claimant, as the dependent entitled to bring a future death benefit claim, received notice that the carrier's consent to the settlement was not unconditional, any concern over notice is resolved by reason of the language contained in the general release signed by both claimant and decedent. The last paragraph states that the "carrier * * * having consented to this settlement, reserve[s] [its] rights for claims for offsets as set forth in the Stipulation attached hereto * * *, which details the terms of the Agreement between the Plaintiffs and the said * * * carrier." Notably, the general release, stipulation and structured settlement were all executed contemporaneously and claimant's signature on the release satisfies us that she participated in the settlement of her legal claims with sufficient notice of the carrier's nonwaiver of its offset rights.

Having determined that the carrier sufficiently preserved its offset rights in this instance, the question then turns to the precise amount of the credit which, in the absence of a clear agreement between the parties as to the amount (*see, e.g., Matter of Withers v Century Fed. Sav. & Loan Assn.*, 26 AD2d 738), is a question of fact for the Board (*see, Matter of Harris v Grey Adv.*, 180 AD2d 879). The carrier objects to the Board's ruling that it is entitled to zero credit, pointing out that claimant's waiver of her right to pursue a future wrongful death claim in the context of the structured settlement served as a bar to its right, as a statutory assignee, to pursue such a claim under Workers' Compensation Law § 29 (2) (*see generally, Commissioners of State Ins. Fund v Farrand Opt. Co.*, 295 NY 493, 499; 109 NY Jur 2d, Workers' Compensation § 131). Conse-

quently, the carrier maintains that the settlement must have included more than the release of claimant's derivative claims for loss of consortium and services; it also constituted compensation for the surrender of a future wrongful death claim.

The carrier asserts that, contrary to the Board's ruling, the stipulation contains a binding agreement as to the credit amount and, initially, argues that the offset amount should be $650,000 based upon language in paragraph 2 explicitly stating that "[t]he amount of the net recovery to be used by the carrier as an offset in the Workers' Compensation claim of [decedent] shall be [$650,000]." Claimant is not mentioned in this paragraph. Thus, despite the carrier's contention otherwise, it cannot fairly be stated that there was an unambiguous agreement that this amount applied as an offset to claimant's separate, future claims. Accordingly, the record supports the Board's findings that the amount of $650,000 was specifically designated solely as an offset for decedent's workers' compensation claim and "the carrier is not allowed to transfer this credit from the injury claim to [claimant's] death claim."

The carrier alternatively argues that, since paragraph 9 of the stipulation specifically mentions the amount of $109,960, it should be allowed to utilize that total figure as its credit. The carrier's interpretation in that regard is not supported by the language in the stipulation or the structured settlement. Paragraph 9 of the stipulation states in its entirety: "It is agreed that for the purposes of determining the carrier's credit for net recovery in the *husband's* Workers' Compensation claim, the total net recovery was reduced by the sum of [$109,960] which represents the present wife's share of the malpractice settlement" (emphasis supplied). By its express terms, this language confirms that this amount was employed for the sole purpose of determining the amount to be used as a credit as to decedent's separate claim. Significantly, the carrier is only entitled to a credit representing that portion of the settlement that compensated claimant for the waiver of a future wrongful death action and should receive no credit for amounts received by claimant to compensate her for her derivative claims. Although paragraph 9 does mention claimant's share of the malpractice settlement, it does not state the apportionment thereof. Specifically, nowhere does it state whether that amount constitutes compensation for claimant's derivative claims, waiver of a future wrongful death claim, or both. Thus, our review of the stipulation provides no support for the argument that there was an unambiguous agreement as to a specific offset amount.

While in certain cases the allocation issue can be resolved by reference to the terms of the settlement of the third-party action (*see, e.g., Martin v Agway Petroleum Corp.*, 161 AD2d 1129; *Matter of Withers v Century Fed. Sav. & Loan Assn.*, 26 AD2d 738, *supra*), in this case, the structured settlement agreement also provides no guidance as to how the parties intended the lump-sum payment to claimant and decedent to be apportioned. Although it is the Board's responsibility to resolve the factual issue (*see, Matter of Harris v Grey Adv.*, 180 AD2d 879, *supra*), the Board's amended decision states only that, in the absence of language in the settlement and stipulation detailing how the settlement was allocated, "it must be assumed" that the settlement money was solely for claimant's derivative claim and nothing was paid for her waiver of future claims. That language does not persuade us that a factual determination was made by the Board that would support that assumption. Accordingly, the matter must be remitted to the Board for development of the record to the extent deemed necessary and a factual determination of the precise credit, if any, to be allowed against claimant's death benefit award (*see, Matter of Petterson v Daystrom Corp.*, 17 NY2d 32, 40; *see also, Matter of Harris v Grey Adv., supra*).

Mercure, Carpinello, Rose and Lahtinen, JJ., concur. Ordered that the decision is reversed, without costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.