# IN THE SUPREME COURT OF IOWA

No. 72 / 06-0032

Filed August 3, 2007

**RANEE GREENFIELD and
STUART GREENFIELD,**

    Appellants,

vs.

**THE CINCINNATI INSURANCE
COMPANY,**

    Appellee.

---

Appeal from the Iowa District Court for Polk County, Michael J. Huppert, Judge.

Plaintiffs appeal the district court's ruling to offset a prior workers' compensation settlement against a jury award for past and future loss of bodily function. Insurance company cross appeals, seeking to offset the settlement against the entire jury verdict. **AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED WITH INSTRUCTIONS.**

R. Ronald Pogge, David S. Gorham, and Barrie J. Terrones of Hopkins & Heubner, P.C., Des Moines, for appellants.

Patrick J. McNulty and Lisa R. Perdue of Grefe & Sidney, P.L.C., Des Moines, for appellee.

**APPEL, Justice.**

In this case, the proceedings take us to an intersection of insurance and workers' compensation law. Specifically, we must decide whether an injured employee's recovery under the underinsured motorist provision of her employer's automobile policy is reduced in whole or in part by workers' compensation benefits she received for injuries arising out of the same accident. The district court offset the workers' compensation recovery against jury awards for medical expenses, lost wages, and past and future loss of function, but refused to allow an offset against jury verdicts for past and future pain and suffering and loss of spousal consortium. For the reasons set forth below, we affirm in part, reverse in part, and remand the matter to the district court for further proceedings.

## I. FACTUAL BACKGROUND AND PRIOR PROCEEDINGS.

Ranee Greenfield and other passengers traveled by van to Des Moines in order to testify at a hearing regarding the operations of East Lane Care Center (East Lane), Ranee's employer. A motor vehicle driven by Zachary Hedgecock ran a red light and struck the van, causing it to roll at least once. Although Ranee was wearing her seat belt, another unbelted passenger was thrown into her upon impact.

Ranee was transported to Iowa Methodist Medical Center, where she complained of head, neck, and chest pain. She was treated with ibuprofen and released. While the majority of her symptoms dissipated or disappeared during her recovery, her chest pain continued. Ranee eventually was diagnosed as suffering from fractures in the costochondral cartilage in her chest. In order to combat her pain, she was twice treated at the Mayo Clinic Pain Center in Rochester, Minnesota.

Ranee filed a workers' compensation claim against her employer and its workers' compensation carrier, Cincinnati Insurance Company (Cincinnati). The parties settled the claim in a "Compromise Special Case Settlement Agreement" pursuant to Iowa Code section 85.35 (2005). The total amount of the settlement was $154,404.28, which consisted of a $17,109.61 payment for medical expenses, $37,294.67 in indemnity payments, and a $100,000 lump sum payment.

Ranee and her husband, Stuart Greenfield, also settled their personal injury claims against the tortfeasor for his liability insurance coverage limit of $30,000. This settlement, however, was subrogated to the interest of Cincinnati, as Ranee's workers' compensation insurer, pursuant to Iowa Code section 85.22(1). As a result, Cincinnati received $19,728.00.

The Greenfields further pursued a claim against East Lane's underinsured motorist carrier (UIM), which also happened to be Cincinnati. This claim was not resolved, and the matter proceeded to trial.

The jury returned a verdict in favor of the Greenfields, awarding Ranee $123,000 and Stuart $50,000 in damages. The special jury verdict in favor of Ranee allocated $10,000 for medical expenses, $25,000 for past pain and suffering, $30,000 for future pain and suffering, $20,000 for past loss of function, $30,000 for future loss of function, $8,000 for lost wages, and $0 for future loss of earning capacity. The special jury verdict in favor of Stuart allocated $20,000 for past loss of consortium and $30,000 for future loss of consortium.

After trial, the district court filed a judgment entry and order in the case. The order applied a provision in Cincinnati's UIM policy with East Lane which allowed a credit/offset for benefits received by Ranee from her workers' compensation settlement and tortfeasor recovery. In applying the

offset provision, the district court determined that the offset was limited by the policy language to duplicative "elements of loss." The district court determined that jury awards for medical expenses, lost wages, and past and future loss of function were "elements of loss" covered by the workers' compensation settlement. The district court also determined that the verdict must be further offset by the Greenfields' recovery from Hedgecock. The Greenfields' settlement with Hedgecock, however, did not allocate the proceeds between them or their injuries. Nevertheless, the district court decided to allocate the $30,000 offset equally between the Greenfields. After removing duplicative "elements of loss" from the jury verdict and applying the $30,000 offset, the district court reduced the award to Ranee to $40,000 and the award to Stuart to $35,000.

Both parties filed motions to reconsider. The district court sustained its prior ruling except with respect to the allocation of the tortfeasor recovery, which was reallocated entirely against Ranee's recovery. Ranee's award was, therefore, reduced to $25,000, with Stuart's award increased to $50,000.

Ranee and Stuart filed a timely notice of appeal.[1] On appeal, the Greenfields argue that the district court erred in allowing the workers' compensation benefits to be offset against the jury awards for past and future loss of function and in allowing Cincinnati to receive "a double credit" by not reducing the amount of the workers' compensation offset by the funds reimbursed to Cincinnati under Iowa Code section 85.22(1).

Cincinnati filed a timely notice of cross appeal. In its cross appeal, Cincinnati asserted that the district court erred in not applying an offset of

---

[1]Although Stuart as well as Ranee filed a notice of appeal, the district court left the special jury verdicts awarding Stuart damages for lost consortium intact. While a cross appeal was filed, the defendant does not challenge the jury's awards to the defendant. As a result, Stuart no longer has a stake in the outcome of this appeal.

the total workers' compensation recovery against the total jury award. Cincinnati also maintained that the district court erroneously refused to apply an offset against the jury's special verdicts for past and future pain and suffering.

## II.    STANDARD OF REVIEW.

The interpretation of an insurance policy is a matter of law.  *A.Y. McDonald Indus., Inc. v. Ins. Co. of N. Am.*, 475 N.W.2d 607, 618 (Iowa 1991).  This court's review, therefore, is for errors at law.  Iowa R. App. P. 6.4.

## III.    DISCUSSION.

### A.    Offsets of Workers' Compensation Recoveries Under Reduction-of-Benefits Provisions of Underinsured Motorist Policies.

*1.    Statutory Authorization of Reduction-of-Benefits Provisions.*

Iowa Code section 516A.1 requires all automobile insurance policies, absent a written rejection by the insured, to include coverage for uninsured and underinsured motorist claims.  Iowa Code section 516A.2(1) further provides that ". . . forms of coverage may include terms, exclusions, limitations, conditions, and offsets which are designed to avoid duplication of insurance or other benefits."  When such language is included in policies covering underinsured motorists, it is referred to generically as a reduction-of-benefits provision.

In *Gentry v. Wise*, 537 N.W.2d 732 (Iowa 1995), this court emphasized that reduction-of-benefits provisions were permissible under Iowa Code section 516A.2(1) so long as their design is to avoid duplication of coverage. *Gentry*, 537 N.W.2d at 735.  Where an insurance contract does not contain a reduction-of-benefits provision authorized by statute, however, reduction of benefits may be denied.  *Detroit Auto Inter-Ins. Exch. v. Ayvazian*, 233

N.W.2d 200 (Mich. Ct. App. 1975); *Progressive Am. Ins. Co. v. Vasquez*, 502 S.E.2d 10 (N.C. Ct. App.), *aff'd in part, rev'd in part*, 515 S.E.2d 8 (N.C. 1998).

### 2. *Offsets of Recoveries from Workers' Compensation.*

In *McClure v. Employers Mutual Casualty Co.*, 238 N.W.2d 321 (Iowa 1976) [hereinafter *McClure I*], this court considered whether the Iowa legislature, in enacting Iowa Code section 516A.2(1), authorized offsets of workers' compensation benefits. The question was not free from doubt as Iowa Code section 516A.2(1) does not expressly authorize offsets of workers' compensation benefits, but only offsets to avoid duplication of "insurance or other benefits."

The *McClure I* court concluded that notwithstanding the failure to specifically authorize reduction of coverage as a result of workers' compensation payments, the Iowa legislature intended to allow insurance companies to offset workers' compensation benefits against uninsured and underinsured motorist claims. While offsets are permissive under Iowa Code section 516A.2(1), they are not mandatory. The particular policy language at issue is controlling. Cincinnati, therefore, is entitled to an offset of workers' compensation benefits to avoid duplication only to the extent that its reduction-of-benefits provision authorizes such offsets.

### B. Meaning of Language in Cincinnati's Reduction-of-Benefits Provision in its Underinsured Motorist Policy.

#### 1. *Overview of Reduction-of-Benefits Provisions.*

In light of *McClure I*, a central question in this case is the meaning of Cincinnati's policy language as it relates to underinsured motorist claims. The applicable language is as follows:

3. No one will be entitled to receive *duplicate payments for the same elements of "loss"* under this Coverage and any Liability Coverage Form.

We will not make a *duplicative payment* under this Coverage for any *element of "loss"* for which payment has been made by or for anyone who is legally responsible.

We will not pay for any *element of "loss"* if a person is entitled to receive payment for the same *element of "loss"* under any *workers' compensation,* disability benefits or similar law.

(Emphasis added.)  The Cincinnati policy further contains language defining "loss."  According to the policy, "loss" means "direct or accidental loss or damage."

The reduction-of-benefits language in Cincinnati's policy relating to *underinsured* motorist claims differs significantly from that relating to claims involving *uninsured* motorists (UM).  The reduction-of-benefits provision related to *uninsured* motorists is as follows:

2. With respect to damages resulting from an "accident" with an "uninsured motor vehicle" . . . the Limit of Insurance shall be reduced by:

a. *All sums paid or payable under any workers' compensation,* disability benefits or similar law, and

b. All sums paid by or for anyone who is legally responsible, including all sums paid under this Coverage Form's Liability Coverage.

(Emphasis added).

The difference between these reduction-of-benefits provisions is not happenstance.  These provisions recognized the fundamental distinction in the policy goals of uninsured and underinsured motorist coverage.  The purpose of uninsured motorist coverage is to make certain that an injured party receives minimum compensation for his or her injuries.  Uninsured motorist protection thus provides a safety net of coverage.  In contrast, the

purpose of underinsured motorist coverage is not to provide a minimum safety net, but to enhance the ability of a claimant in an automobile accident to be made whole for his or her losses. *Veach v. Farmers Ins. Co.*, 460 N.W.2d 845, 848 (Iowa 1990); *McClure v. Northland Ins. Co.*, 424 N.W.2d 448, 449-50 (Iowa 1988) [hereinafter *McClure II*].

Because of these differences, we have adopted a "broad coverage view" of underinsured motorist coverage, while recognizing a "narrow coverage view" of uninsured motorist coverage. Benefits that are duplicative in the context of uninsured motorist coverage, therefore, may not necessarily be so in the underinsured motorist context. *Veach*, 460 N.W.2d at 848.

Cincinnati's two different reduction-of-benefits provisions are consistent with the approach taken in *McClure II* and *Veach*. Any recovery from a third party is "duplicative" in the context of uninsured motorist coverage, while only payments that cover the same type of injury are "duplicative" of underinsured motorist coverage.

> 2. *Meaning of Reduction-of-Benefits Provision Related to Underinsured Motorist Coverage.*

The basic rules for determining the meaning of provisions in an insurance policy are well established. Ultimately, the intent of the parties must control the outcome. Ordinarily, this is determined by the language of the policy. *See A.Y. McDonald Indus., Inc.*, 475 N.W.2d at 618. The insurance policy must be construed as a whole, with the words "given their ordinary, not technical, meaning [in order] to achieve a practical and fair interpretation." *West Bend Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 624 N.W.2d 422, 424 (Iowa Ct. App. 2001). Where the meaning of the terms is susceptible to two interpretations, however, the one favoring the insured is adopted. *Id.*; *see also Wildman v. Nat'l Fire & Marine Ins. Co.*, 703 N.E.2d

683, 687 (Ind. Ct. App. 1998) (contract provision related to reduction of benefits construed in favor of insured); *Sisco v. Am. Family Mut. Ins. Co.*, 806 S.W.2d 409, 411 (Mo. 1991) (same).

The plaintiffs claim that Cincinnati's reduction-of-benefits provision relating to underinsured motorist coverage limits any reduction to "those 'elements of loss' which are compensable under the workers' compensation statute." Plaintiffs argue that the "elements of loss" language in the underinsured reduction-of-benefits provision requires that each claim for recovery must be separately analyzed to determine whether it amounts to an identical claim for which payment has already been made. Under plaintiffs' theory, the beginning point of analysis is not the total recovery of $123,000 obtained from the cumulation of special jury verdicts, but instead commences with an analysis of each separate jury award. Each separate award must then be evaluated to determine if they are the same "element of loss," or "duplicative," of recovery that plaintiff obtained pursuant to the workers' compensation settlement.

Cincinnati asserts, however, that the underinsured policy language means that the entirety of the workers' compensation settlement must be offset against the cumulative jury verdict. According to Cincinnati, under its policy a plaintiff cannot recover more than the entire amount of the jury's verdict in an underinsured motorist case. In other words, Cincinnati claims that if a workers' compensation settlement exceeds the total amount awarded against the underinsured motorist insurer, nothing is owed to its insured as a result of its reduction-of-benefits provision. Cincinnati advances a dollar-for-dollar theory, under which each dollar of recovery from workers' compensation must be offset against any dollar of recovery awarded by the jury.

We believe that the reduction-of-benefits language in Cincinnati's policy supports the plaintiffs' position. With respect to underinsured motorist coverage, the Cincinnati policy expressly limits offsets to payments for "elements of loss" that are "duplicative." While "elements of loss" is not defined in the policy, ordinary usage of the term "element" or "elements" establishes that the word connotes a part of a larger whole and not the larger whole itself. *See Webster's Third New International Dictionary* 734 (2002) (definitions of element or elements include "one of the constituent parts" and "one of a number of distinct or disparate units, parts," etc.); *The American Heritage Dictionary: College Edition* 444-45 (2d ed. 1985) (definition of element or elements includes "a fundamental, essential, or irreducible constituent of a composite entity" and a "member of a set"). Cincinnati's policy language for underinsured motorist coverage clearly suggests the need to break down the total loss or recovery awarded by the jury into "elements of loss" and then analyze each "element of loss" separately to determine whether the recovery for that "element" is "duplicative" or amounts to "the same element of loss" recovered under a workers' compensation settlement.

Our common sense interpretation of the reduction-of-benefits language for *underinsured* motorist claims is supported by Cincinnati's use of substantially different reduction-of-benefits language in the policy for *uninsured* motorists. For *uninsured* motorists, the Cincinnati policy provides that insurance coverage is reduced by "[a]ll sums paid or payable under any workers' compensation, disability benefits or other similar law. . . ." Indeed, if the language applicable for uninsured motorist coverage applied to underinsured motorist claims, Cincinnati would be in a comparatively stronger position.

A cardinal rule of contract interpretation is that the use of substantially different language in provisions of a contract must have been intentional and must be recognized by a reviewing court. *See* Restatement (Second) of Contracts: Rules in Aid of Interpretation § 202(2) (1981) ("A writing is interpreted as a whole . . . ."); *Bowers Hydraulic Dredging Co. v. United States,* 211 U.S. 176, 188, 29 S. Ct. 77, 80, 53 L. Ed. 136, 141 (1908) ("To separate the words [of that provision] from all the other provisions of the contract, in order to give them an assumed . . . meaning, repugnant to their significance in the contract, would be to destroy, and not to sustain and enforce, the contract requirements."). The policy language chosen by Cincinnati for offsetting workers' compensation recoveries in the context of an *underinsured* claim must be regarded as narrower than in cases involving *uninsured* motorist claims.

Case law from other jurisdictions which supports our interpretation is overwhelming. Where reduction-of-benefits provisions state that "all sums paid or payable" under workers' compensation are subject to offsets, the total amount of the workers' compensation award is offset against either the total recovery or, in some jurisdictions, the policy limit. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Coe,* 855 N.E.2d 173 (Ill. App. Ct. 2006) (total offset of "any amount paid or payable" provision); *Park v. Am. Cas. Ins. Co.,* 555 N.W.2d 720 (Mich. Ct. App. 1996) (total offset under "all sums paid or payable" provision).

In contrast where the policy language allows for offsets only where elements of loss are duplicative, or involve "the same element of loss," courts routinely break down the total recovery into its separate claims and determine whether a reduction of benefits is appropriate for each individual element. *See, e.g., Nat'l Ins. Ass'n v. Sockwell,* 829 So. 2d 111, 132 (Ala.

2002) (upholding jury award, in part, on bad faith claim as a result of the insurer's failure to segregate out elements of loss that were duplicated by the workers' compensation recovery); *Vitanza v. Amica Mut. Ins. Co.*, 820 A.2d 324, 331 (Conn. Ct. App. 2003) (provision allowing reduction for "duplicate payments for same elements of loss" does not mean reduced liability, as costs of medical services are not plausibly the same as losses attributable to lost wages or to pain and suffering); *St. Paul Fire & Marine Ins. Co. v. Employers Ins. Co. of Nevada,* 146 P.3d 258, 263 (Nev. 2006) (distinguishing dollar-for-dollar reduction of benefits under "any amount payable" reduction-of-benefits provision with more restrictive "elements of loss" language).

Cincinnati relies on our decision in *Matthess v. State Farm Mutual Automobile Insurance Co.,* 548 N.W.2d 562 (Iowa 1996). In *Matthess,* we held that an underinsured insurance carrier was entitled to an offset of funds received through workers' compensation. Unlike the policy language here, the insurer's underinsurance reduction-of-benefits provision in *Matthess* provided that "all sums paid or payable" under workers' compensation should be deducted under its coverage. The contractual issue of whether the jury recovery was "duplicative" of the same "element of loss" covered by workers' compensation was not presented in the case. Further, the statutory issue in the case was whether Iowa Code section 516A.4, which limits an underinsured carrier's right of reimbursement to persons or organizations "legally responsible for the bodily injury," prevented any offset for workers' compensation benefits under section 516A.2(1). The only holding of the court in *Matthess* is that an offset for duplicate payments under section 516A.2(1) did not conflict with section 516A.4.

Cincinnati also relies on *Imre v. Lake State Insurance Co.*, 803 N.E.2d 1126 (Ind. Ct. App. 2004). In *Imre,* the plaintiff was injured by the negligence of both an uninsured tortfeasor and an underinsured tortfeasor. The case did not involve a determination of the degree to which a workers' compensation settlement was duplicative of a jury award for underinsured coverage, but rather whether the claimant could recover under both the UM and UIM coverage of the same policy. The issue presented in *Imre* was thus entirely different from that presented in this case. Further, the *Imre* court emphasized the case's unique policy language which distinguished "loss" from "damages." In the matter before us, however, the Cincinnati policy defines "loss" as "direct or accidental loss or damage." We thus find *Imre* unpersuasive on the issues presented here.

The bottom line is that Cincinnati asks us to alter its reduction-of-benefits provision related to *underinsured* motorist claims to make it identical with the reduction provision related to *uninsured* motorist claims. We decline the invitation to rewrite Cincinnati's own contract.[2] As a result, we agree with plaintiffs that it is necessary to determine which elements of loss awarded by the jury are, in fact, duplicative or the same as payments made under the workers' compensation settlement. As the proponent of the offset, Cincinnati has the burden of proving that without an offset, plaintiffs

---

[2]We note that Iowa Code section 516A.2(1) requires that any reduction or offset be designed to avoid "duplication" of insurance or other benefits. There is authority for the proposition that under such statutory provisions, "total damages must be divided into each component loss." 12 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* 3d § 171:38 (2007). As a result, there is a substantial question as to whether the dollar-for-dollar reduction advocated by Cincinnati as a result of the workers' compensation settlement would comply with this statute. Because we interpret Cincinnati's reduction-of-benefits provision for underinsured motorists not to authorize a dollar-for-dollar reduction, but instead allows reduction only for duplicative or the same elements of loss, it is not necessary to reach the statutory issue.

would receive duplicative payment for the same element of loss. *Williams v. Am. States Ins. Co.*, 986 P.2d 1260, 1262 (Ore. Ct. App. 1999).

**C.  Cincinnati's Contractual Entitlement to Offset for Duplicative "Elements of Loss."**

*1.  Offset Against Jury Award for Past and Future Pain and Suffering.*

The jury awarded Ranee $25,000 for past pain and suffering and $30,000 for future pain and suffering. The district court did not allow Cincinnati to offset amounts recovered in the workers' compensation settlement against these amounts, holding that pain and suffering would not be part of any benefits awarded under workers' compensation.

We agree with the district court's resolution. Nothing in the workers' compensation statute authorizes recovery for pain and suffering not related to an industrial disability. *Black v. Chicago Great W. Ry.*, 187 Iowa 904, 917, 174 N.W. 774, 778-79 (1919) ("The amount of the recovery for tort might be in a greater amount than the compensation fixed by the [workers' compensation] statute, since there may be other elements of damage allowed in an action for tort, as, for instance, pain and suffering, etc."); *see also Reliance Ins. Co. v. Blackford*, 100 P.3d 578, 580 (Colo. Ct. App. 2004) (pain and suffering not recoverable under workers' compensation statute); *Brooks v. Chicola*, 514 So.2d 7, 13 (La. 1987), *superseded by statute*, La. Rev. Stat. Ann. § 23:1103, *as recognized in Harris v. Ballanshaw*, 576 So.2d 602 (La. Ct. App. 1991) (no double recovery with workers' compensation where employee retains one hundred percent of pain and suffering award); *Shutter v. Philips Display Components Co.*, 688 N.E.2d 235, 238 (N.Y. 1997) (workers' compensation award not duplicative of pain and suffering under reduction-of-benefits provision); *Fanning v. Davne*, 795 A.2d 388, 397 (Pa.

Super. Ct. 2002) (workers' compensation payment for lost wages and medical bills does not entitle UIM insurer to offset for pain and suffering).

In this case, the special verdict form segregated loss of past and future earnings from past and future pain and suffering. Cincinnati does not claim that the jury did not properly segregate these elements of loss. *See, e.g., Thompson v. Nat'l R.R. Passenger Corp.*, 621 F.2d 814, 823 (6th Cir. 1980) ("Damage awards by a trial court without a jury are findings of fact, which must stand unless they are clearly erroneous."). As a result, the jury's award of $55,000 is not duplicative of payments for the same element of loss received by Ranee in the workers' compensation settlement. Cincinnati is not entitled to an offset regarding this element under its reduction-of-benefits provision for underinsured motorist coverage.

### 2. *Offset Against Jury Award for Past and Future Loss of Function.*

The jury awarded Ranee $20,000 for past loss of function and $30,000 for future loss of function. The district court's ruling allowed an offset of these amounts as a result of the workers' compensation settlement.

We disagree with the district court's reduction of Ranee's jury award on this issue. It was undisputed that Ranee obtained a workers' compensation settlement for an unscheduled injury. Industrial disability payments made as a result of unscheduled injuries are designed to compensate an employee for lost earning capacity. *Second Injury Fund v. Nelson*, 544 N.W.2d 258, 265 (Iowa 1995). The focus is not solely on what the worker can and cannot do, but is instead on the ability of the worker to be gainfully employed. *Keystone Nursing Care Ctr. v. Craddock*, 705 N.W.2d 299, 306 (Iowa 2005); *Second Injury Fund*, 544 N.W.2d at 265-66.

Recovery for loss of bodily function in tort is a different concept. At trial, Ranee presented evidence regarding her inability to engage in hobbies, such as gardening, riding in a car, and even eating. Under Iowa law, tort recovery for loss of function is allowed "for the full deprivation of full mind and body, separate and apart from impairment of earning capacity." *Schnebly v. Baker,* 217 N.W.2d 708, 726 (Iowa 1974), *abrogated on other grounds by Franke v. Junko,* 366 N.W.2d 536, 539 (Iowa 1985); *see also* Iowa Practice: Civil Litigation Handbook § 18:10, at 195 (2006) (loss of bodily function is element of damage separate and apart from impairment of earning capacity).

Cincinnati simply cannot successfully argue that the tortious recovery for loss of function, which is "separate and apart" from recovery for impairment of earning capacity under our workers' compensation statute, is "duplicative" or represents the same "element of loss" under its underinsured motorist reduction-of-benefits provision. The lack of duplication or sameness is underscored in this case by the jury verdicts for past and future loss of earning capacity, which the jury awarded separate and apart from the loss of bodily function. In light of this analysis, the district court erred in allowing an offset with respect to these recoveries.

> 3. *Offset Against Award for Medical Expenses and Lost Wages.*

The jury awarded Ranee $10,000 for medical expenses and $8,000 for lost wages. Plaintiffs concede that these recoveries are duplicative of payments made as part of the workers' compensation settlement.

Plaintiffs argue, however, that Cincinnati is not entitled to an offset against these duplicative elements of loss because Cincinnati has already been reimbursed for these amounts as a result of plaintiffs' settlement with

the tortfeasor. Plaintiffs point out that the entire $30,000 recovered from the tortfeasor was assigned to Cincinnati. Although the plaintiffs and the tortfeasor did not allocate the settlement amount obtained from the tortfeasor, plaintiffs claim that $18,000 of the $30,000 settlement amount should be attributable to medical care and lost wages.

While not expressly stated in this fashion, the thrust of the plaintiffs' argument is that there has not simply been two payments for medical expenses and lost wages, but in fact three payments: (1) through the workers' compensation settlement; (2) as a result of the jury verdict; and (3) as a result of the settlement with the tortfeasor. Because the insurer has already been reimbursed for the jury's award of medical care and lost wages through the settlement with the tortfeasor, the plaintiffs seek to keep the jury award on the ground that Cincinnati is not entitled to be reimbursed *twice* for medical expenses and lost wages. Plaintiffs dub it a "double credit."

Cincinnati responds that under plaintiffs' scenario, Ranee would receive double compensation for medical expenses and lost wages. Cincinnati further counters that under its reduction-of-benefits provision for underinsured motorist claims, it is entitled to a pro tanto offset of the entire amount of settlement funds paid by a co-defendant. Cincinnati argues that plaintiffs impermissibly seek to force Cincinnati to pay plaintiffs' attorneys' fees and costs.

The question of whether a payment of funds received by a claimant from a tortfeasor to a workers' compensation carrier defeats a claim for reduction of underinsured policy benefits has been considered by a number of courts. An appellate court in Illinois over forty years ago held that such payments have no effect on the insurer's right to offset. *Niekamp v. Allstate*

*Ins. Co.*, 202 N.E.2d 126, 128 (Ill. App. Ct. 1964). A more recent decision from an appellate court in North Carolina held that such payments reduce or eliminate the right of offset, as claimed by the plaintiffs in this case. *Manning v. Fletcher*, 402 S.E.2d 648, 652 (N.C. Ct. App. 1991), *aff'd*, 413 S.E.2d 798 (N.C. 1992).

We find that the issue here is controlled by the policy language in Cincinnati's underinsured reduction-of-benefits provision. This provision unconditionally states that Cincinnati will not make "duplicative" payments for the same "element of loss" covered by workers' compensation benefits. The plaintiffs candidly concede that the special jury verdicts for medical expenses and past wages are, in fact, duplicative of workers' compensation payments.

As a result, any payment by Cincinnati for lost wages or medical expenses is duplicative and therefore subject to offset under the reduction-of-benefits provision for underinsured motorist claims. We enforce the contract as written.

### 4. Offset of Settlement Proceeds from Tortfeasor.

The district court reduced the jury award to Ranee by the entire $30,000 settlement with the tortfeasor. The plaintiffs do not challenge the district court's allocation of the entire $30,000 in settlement proceeds received from the tortfeasor to Ranee, nor do the plaintiffs challenge the trial court's reduction of Ranee's jury's award by $30,000 as a result of this payment.

Cincinnati asserts that Stuart's recovery must be offset by the recovery from the tortfeasor. Stuart's award of consortium, however, is not duplicative of any "element of loss" recovered in the workers' compensation settlement. Consortium is "the separate property right of each spouse; it is

an independent, nonderivative claim." *In re Estate of Sylvester*, 559 N.W.2d 285, 288 (Iowa 1997) (quoting *Huber v. Hovey*, 501 N.W.2d 53, 57 (Iowa 1993)). Therefore, Cincinnati is not entitled to an offset as a result of Stuart's recovery.

## IV. CONCLUSION.

The ruling of the district court is affirmed in part and reversed in part. The judgment in favor of Ranee totaling $123,000 is offset by $18,000 because the jury's special verdicts for lost wages and medical expenses are duplicative of elements of loss covered by Ranee's workers' compensation benefits. The district court's further reduction of Ranee's total jury award by $30,000 as a result of the settlement with the tortfeasor has not been appealed and, as a result, Ranee's recovery should also be reduced by that amount. The jury's special verdicts with respect to pain and suffering and loss of function, however, are not subject to offset because they are not "duplicative" of "elements of loss" recovered in the workers' compensation settlement.

As a result of the permissible offsets, Ranee is entitled to judgment in the amount of $75,000, plus interest at the rate of 6.18% from December 1, 2005. Stuart is entitled to the award of $50,000, plus interest at the same rate. Judgment should be entered accordingly.

**AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED WITH INSTRUCTIONS**.