**Velvet IMRE, Individually, and as the Parent, Natural Guardian and Next Friend of Gregory Gambill, A minor, and Gregory Gambill, individually, Appellant–Plaintiff,**

v.

**LAKE STATES INSURANCE COMPANY, Appellee–Defendant.**

No. 64A03–0308–CV–330.

Court of Appeals of Indiana.

Feb. 23, 2004.

Transfer Denied May 21, 2004.

Robert P. Harper, Harper and Rogers, Valparaiso, IN, Attorney for Appellant.

Thomas Todd Reynolds, Threlkeld Reynolds, LLP, Indianapolis, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Velvet Imre ("Imre"), individually and as next friend of Gregory Gambill ("Gambill"), filed suit in Porter Superior Court seeking a declaratory judgment to recover from her insurer, Lake States Insurance Company ("Lake States"), the cost of Gambill's injuries, which arose from the combined negligence of both an uninsured and an underinsured motorist. The trial court granted Lake States' Motion for Partial Summary Judgment and denied Imre's Motion for Summary Judgment. Imre now appeals, and the parties present the following restated issues for appellate review:

I. Whether Imre forfeited appellate review by failing to comply with the Indiana Rules of Appellate Procedure;

II. Whether the trial court erred when it held that Lakes States was not required to compensate Gambill pursuant to both the uninsured and underinsured motorist coverage provisions of Lake States Insurance Policy 0A 10084134-3 ("the Policy"); and,

III. Whether the trial court erred when it held that Gambill's underinsured motorist compensation should be "setoff" by Gambill's partial recovery from the underinsured motorist's insurance company.

We conclude that Imre did not forfeit appellate review. However, we also conclude that the trial court did not err when it held (1) that Gambill was not entitled to recover pursuant to both the uninsured and underinsured motorist coverage provisions of the Policy and (2) that Gambill's underinsured motorist compensation may be set off by his partial recovery from the underinsured motorist's insurance company. Accordingly, we affirm.

### Facts and Procedural History

On May 18, 1998, Gambill was a passenger on an all terrain vehicle ("ATV") operated by Adam Blossom ("Blossom"). The ATV was traveling eastbound on County Road 1225 North in Porter County, Indiana. Krista Gillikin ("Gillikin") was operating a pickup truck on County Road 1225 North when she came upon the ATV operated by Blossom and attempted to pass Blossom's ATV in a no-passing zone. As Gillikin moved to pass, Blossom made a sudden left turn. Gillikin's pickup truck struck the ATV, and Gambill and Blossom were thrown from the ATV. Gambill sustained bodily injuries in excess of $200,000 as a result of this incident.

At the time of the accident, Gillikin was insured by United Farm Family Mutual Insurance Company ("United Farm"). United Farm's insurance agreement with Gillikin limits Gillikin's insurance coverage to $50,000. United Farm has tendered that amount to Gambill. Blossom does not possess insurance coverage for the incident in question. Gambill is insured pursuant to the Policy. The Policy provides Gambill with $100,000 of uninsured and underinsured motorist coverage.

Imre, as next friend and natural guardian of Gambill, filed suit against Lake

States. Imre's suit alleges that, because Gambill's injuries resulted from the combined negligence of both an uninsured and an underinsured motorist, Gambill is entitled to recover from both the underinsured and uninsured motorist coverage provisions of the Policy, resulting in a net recovery of $200,000.

On August 13, 2002, Imre moved for summary judgment. On August 16, 2002, Lake States moved for partial summary judgment. Lake States' Motion for Partial Summary Judgment alleges that its liability for the incident in question is limited to $50,000, which is derived from United Farm's $50,000 payment to Gambill subtracted from Gambill's $100,000 underinsured motorist coverage provided by the Policy. On July 29, 2003, the trial court issued an order granting Lake States' Motion for Partial Summary Judgment and denying Imre's Motion for Summary Judgment. Imre now appeals.

## I. Standard of Review

When reviewing a grant or denial of a motion for summary judgment, our standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Catt v. Bd. of Comm'rs*, 779 N.E.2d 1, 3 (Ind.2002). Summary judgment is appropriate only where the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* All facts and reasonable inferences drawn therefrom are construed in favor of the nonmoving party. *Id.*

■ In instances where parties make cross-motions for summary judgment, we consider each motion separately to determine whether each respective moving party is entitled to judgment as a matter of law. *Lake States Ins. Co. v. Tech Tools Inc.*, 743 N.E.2d 314, 318 (Ind.Ct.App. 2001).

## II. Forfeit of Appellate Review

■ Lake States asserts Imre's Appellate Brief contains several material violations of the Indiana Rules of Appellate Procedure that render the brief difficult to comprehend and wastes this court's time. In fact, ten pages of Lake States' Appellee's Brief are devoted to criticisms of Imre's Appellate Brief. Br. of Appellee at 1–2, 4–9, 21–24. These criticisms include allegations of: (1) grammatical, quotation, and formatting errors, (2) the lack of more precise subheadings, (3) material misrepresentations, (4) failure to provide adequate citation, (5) failure to argue cogently, (6) failure to include a more precise statement of the issues,[1] (7) failure to include the word "we" in a quote, and (8) minor technical errors. *Id.*

We agree that some of Imre's arguments require more than one reading to understand, and some of Imre's factual assertions border on exaggeration of the record. However, at no time does Imre make a material misrepresentation, and Imre's Appellate Brief is argued with sufficient clarity for this court to comprehend the gravamen of Imre's positions. We

---

1. Indeed, we note that, after asserting Imre failed to comply with Indiana Appellate Rule 46(A)(4) by failing to include a separate statement of the issue for her "setoff argument," Lake States failed to include a separate statement of the issue for its setoff argument. Br. of Appellee at 1, 21; *See* Ind. Appellate Rule 46(B)(1) (Appellee's brief shall conform to Indiana Appellate Rule 46(A)(4) unless the appellee states that he or she agrees with the appellant's statement of the issues). In addition, Lake State's attorney inaccurately characterized himself as "Attorney for Appellant" on the cover page of Lake States' Appellee's Brief.

therefore decline to find that Imre has forfeited appellate review.

### III. Stacking of Underinsured and Uninsured Motorist Coverage

 Imre contends that the terms of the Policy allow Gambill to recover $100,000 pursuant to the underinsured motorist coverage provision of the Policy and an additional $100,000 pursuant to the uninsured motorist coverage provision of the Policy, providing Gambill with a net recovery of $200,000.

 The interpretation of an insurance contract is primarily a question for the court. *Shelter Ins. Co., v. Woolems,* 759 N.E.2d 1151, 1155 (Ind.Ct.App.2001), *trans. denied* (citing *Am. States Ins. Co. v. Adair Indus. Inc.,* 576 N.E.2d 1272, 1273 (Ind.Ct.App.1991)). "Although some special rules of construction of insurance contracts have been developed due to the disparity in bargaining power between insurers and the insured, if an insurance contract is clear and unambiguous, the language therein must be given its plain and ordinary meaning." *Beam v. Wausau Ins. Co.,* 765 N.E.2d 524, 527 (Ind.2002) (citing *Allstate Ins. Co. v. Boles,* 481 N.E.2d 1096, 1101 (Ind.1985)). When ambiguity is present, insurance policies are to be construed strictly against the insurer and the policy language is viewed from the standpoint of the insured. *Id.* (citing *Bosecker v. Westfield Ins. Co.,* 724 N.E.2d 241, 244 (Ind.2000)). However, an ambiguity is not established simply because a controversy exists and the insured asserts an interpretation contrary to that asserted by the insurer. *Shelter Ins.,* 759 N.E.2d at 1155.

Section C of the Uninsured Motorist Coverage Limit of Liability provision of the Policy states:

> No one will be entitled to receive duplicate payments for the same elements of loss under [this policy's Uninsured Motorist Coverage provision] and ... [a]ny Underinsured Motorists Coverage provided by this policy.

Appellants' App. p. 31. Section C of the Underinsured Motorist Coverage Limit of Liability provision of the Policy states:

> No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A, Part B, or Part C of this policy.

Appellants' App. p. 33.

Imre asserts "same elements of loss," contained within these provisions, is not defined by the Policy and the term can be construed to denote "same elements of damages" rather than the proposition that Gambill is not entitled to recover pursuant to both the uninsured and underinsured motorist provisions of the Policy. Br. of Appellant at 9–10. Thus, under Imre's interpretation, because there is ambiguity in the insurance contract, it must be construed against Lake States by interpreting "same elements of loss" to denote "same elements of damages." [2]

 This argument is unpersuasive. When the Policy references "damages" it explicitly uses the term "damages." The Policy uses the term "damages" on at least six separate occasions. Appellants' App. pp. 28–35. We must accept an interpretation of the contract language that harmonizes the provisions of the insurance con-

---

**2.** Imre asserts Gambill suffered multiple forms of "damages" as a result of the accident and, consequently, under Imre's interpretation of "same elements of loss," Gambill is entitled to recover under both the underinsured and uninsured provisions of the Policy. Br. of Appellant at 9–10 (citing Indiana Pattern Jury Instructions §§ 11.20–11.26).

tract rather than one which supports a conflicting version of the provisions. *See Shelter Ins.*, 759 N.E.2d at 1155.[3]

Because "same elements of loss" does not denote "same elements of damages," Imre has not advanced a plausible interpretation of "same elements of loss" to compete with the interpretation advanced by Lake States, and there is no ambiguity in the term. Rather, as the name "Limit of Liability Clause" suggests, the term "same elements of loss" within Section C of the Underinsured and Uninsured Motorist Clauses serves to denote that an insured may not recover under both the underinsured and uninsured provisions of the Policy.

In *Auto–Owners Insurance Company v. Boissonneault,* the Michigan Supreme Court, while ruling in favor of the insurer, stated:

> If both vehicles involved in the accident were, as was the vehicle in which [the insured] was riding, underinsured, the total limit of liability would indisputably be $50,000. Similarly, if the vehicle in which [the insured] was riding was uninsured, as was the other vehicle involved in the accident, the total limit of liability would, again, indisputably be $50,000. We are of the opinion that a reasonable policyholder would not expect that the policy would provide for recovery of [$100,000] by reason of the happenstance that the accident involved both an uninsured vehicle and an underinsured

vehicle, rather than two uninsured or two underinsured vehicles.

439 Mich. 126, 479 N.W.2d 348, 350 (1992).

We find the Michigan Supreme Court's reasoning persuasive. Imre could not have understood the Policy to provide $200,000 worth of coverage as a result of the happenstance that Gambill's injury arose from the negligence of both an uninsured and underinsured motorist.[4] This conclusion is buttressed further by the fact that the Policy's conventional coverage for bodily injury is limited to $100,000 rather than $200,000. Appellants' App. p. 19.

For all of these reasons, the trial court properly determined that the terms of the Policy do not require Lake States to compensate Gambill with both uninsured and underinsured motorist payments.

### IV. Setoff

■ Imre also asserts that the trial court improperly subtracted the $50,000 tendered by United Farm from the $100,000 of Gambill's underinsured motorist coverage provided by the Policy.

Section D of the Underinsured Motorist Coverage Limit of Liability provision of the Policy states:

> We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

Appellants' App. p. 33.

As within Section III of this opinion, we do not interpret "element of loss" to de-

---

**3.** Indeed, this harmonization requirement is one of the most important reasons we cannot agree with the dissent's reliance on *Fischer v. Midwest Sec. Ins. Co.*, 673 N.W.2d 297, (Wis. Ct.App., 2003), and its reasoning.

**4.** Imre also asserts Gambill is entitled to recover pursuant to both the uninsured and underinsured motorist coverage provisions of the Policy because there is a separate premi-

um listed for each respective coverage. However, the separate listed premiums merely are indicative of the risk assessment assigned to each respective coverage and are not indicative of a reasonable belief upon the part of the insured that the Policy provides simultaneous coverage under both provisions. Appellants' App. p. 19.

note "element of damages," and this provision clearly allows Lake States' liability to be set off by any amount paid by other persons or insurance companies.[5] Because Imre admits that United Farm has tendered $50,000 to Gambill and the terms of the Policy clearly provide for setoff, the trial court's decision to subtract $50,000 from Lake States' total underinsured motorist liability was correct.

## Conclusion

Imre did not forfeit appellate review. However, the trial court did not err when it held that Gambill is not entitled to recover pursuant to both the uninsured and underinsured motorist liability provisions of the Policy or that the amount tendered by United Farm should be set off against Lake States' underinsured motorist liability coverage.

Affirmed.

NAJAM, J., concurs.

ROBB, J., concurs in part and dissents in part with opinion.

ROBB, Judge, concurs in part and dissents in part with opinion.

The majority holds that Gambill is not entitled to payment under both the uninsured and underinsured provisions of the policy. I respectfully dissent.

The uninsured and underinsured provisions of the policy state that no one is entitled to receive "duplicate payments" for "the same elements of loss." The majority holds that "the same elements of loss" is not ambiguous and can only mean that Gambill is not entitled to recover under both the uninsured and underinsured provisions, noting that the phrase cannot be read to mean "the same elements of damages" because the policy explicitly uses the term "damages" in other provisions. *See* op. at 1131.[6] I disagree. The policy does not define "the same elements of loss." It is entirely plausible, as Imre posits, that losses attributable to costs for medical services are not the same as losses attributable to lost wages and loss of earning capacity, past and future pain and suffering, permanent impairment, disability, or disfigurement, and emotional distress, all compensable losses due to injury. If the policy intended all compensable losses to be considered under the umbrella of a single "loss," the policy could have stated that no one is entitled to duplicate payments for "*a* loss." Instead, the policy uses the phrase "*elements* of loss." The usage of the plural indicates to me that the policy recognizes the different categories of loss and is limiting only duplicate payments for any one element. In any event, Imre has set forth a reasonable reading of the policy, and I would therefore hold that the policy is ambiguous and construe it strictly against Lake States.

Moreover, I note that Section D of both the uninsured and underinsured motorist

---

5. Other provisions of the Policy support this position. The Policy's underinsured motorist coverage premium is less than half of its uninsured motorist coverage premium. Appellants' App. p. 21. It is unlikely that the parties to the Policy believed an injured insured would receive $100,000 of coverage in addition to any amounts paid by the underinsured driver while at the same time paying over twice the premium for $100,000 of coverage pursuant to the uninsured motorist premium of the Policy.

6. I do not believe that construing "same elements of loss" to encompass more than just costs for medical services necessarily interprets the phrase to mean "same elements of damages" and renders the provision out of harmony with the remainder of the contract. I interpret "loss" to be a bigger umbrella under which the smaller element of "damages" falls, and thus believe that my interpretation also harmonizes the contract.

coverage limit of liability provisions states that "[w]e will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible." Appellants' Appendix at 31–32, 33. The plain language of this section can only be understood to mean that a "duplicate payment" is one where both the tortfeasor and the insurer compensate the insured for the same element of loss, thus guarding against the insured profiting beyond the actual damages incurred. There is no reason why "duplicate payment" as it is used in Section C should be read to mean something entirely different.

There is no dispute that the "elements of Gambill's loss" exceed $200,000. Were he to recover policy limits under both the uninsured and underinsured provisions of the policy, he would not be profiting beyond his actual damages. Thus, there would be no duplicate payment for any one element of loss.

The majority also states that Imre could have no reasonable belief that the policy provides simultaneous coverage under both the uninsured and underinsured provisions. Again, I disagree. The declarations page of the policy shows separate coverage for uninsured and underinsured motorists. Appellants' Appendix at 21. Imre paid a separate premium for each type of coverage. *Id.* "Uninsured" and "underinsured" motor vehicles are defined in the policy. Appellants' Appendix at 31, 33. The definitions are mutually exclusive; one cannot be both an uninsured and underinsured motorist. Thus, there are two separate risks contemplated and covered by the policy. The insured can recover under both the bodily injury and property damage liability coverage provisions of the policy for which separate premiums are paid; without specific language stating otherwise, I see no reason why it would not be reasonable for the insured to believe that he could also recover under both the uninsured and underinsured motorist coverage.

Accordingly, I would hold that Gambill can recover up to the policy limits of both the uninsured and underinsured provisions of the policy,[7] and I would therefore hold that the trial court erred in granting Lake States' Motion for Partial Summary Judgment and denying Imre's Motion for Summary Judgment. Therefore, I dissent from Sections III and IV of the opinion and concur in the remainder.

7. The Wisconsin Court of Appeals recently considered the issue of payment under both uninsured and underinsured provisions of a policy identical to this one in all relevant aspects and came to this same conclusion. I find the Wisconsin court's reasoning persuasive and have adopted some of that reasoning herein. *Fischer v. Midwest Sec. Ins. Co.,* 673 N.W.2d 297 (Wis.Ct.App., 2003).