# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**THOM W. KRAMER**
Buoscio, Pera & Kramer
Merrillville, Indiana

ATTORNEYS FOR APPELLEE:

**JOSEPH STALMACK**
**KRISTY M. KOPACZEWSKI**
Joseph Stalmack & Associates, P.C.
Munster, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

CHRISTINE ANDERSON,  )
                                                )
    Appellant-Plaintiff,  )
                                                )
         vs.  )  No. 64A03-1309-CT-359
                                                )
INDIANA INSURANCE COMPANY,  )
a member of LIBERTY MUTUAL GROUP,  )
                                                )
    Appellee-Defendant.  )

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Roger V. Bradford, Judge
Cause No. 64D01-1204-CT-3314

**May 2, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Christine Anderson appeals the trial court's grant of the motion for summary judgment filed by Indiana Insurance Company ("Indiana Insurance"), a member of Liberty Mutual Group. Anderson raises one issue which we revise and restate as whether the trial court erred in granting summary judgment in favor of Indiana Insurance. We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On October 29, 2010, while Anderson was stopped in traffic, she was struck by a vehicle driven by Denise Cox and sustained injuries to her neck and left shoulder including a left rotator cuff tear. The accident occurred during the course of Anderson's employment.

Anderson received $25,000 from Cox's insurer and $81,166.15 in worker's compensation benefits.[1] At the time of the accident, Anderson was insured under a policy (the "Policy") with Indiana Insurance which included underinsured motorists coverage with an applicable policy limit of $100,000. The underinsured motorist coverage of the Policy provided:

A.     We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":

    1.     Sustained by an "insured"; and

---

[1] In her response in opposition to Indiana Insurance Company's motion for summary judgment, Anderson alleged that she received $81,166.15 in worker's compensation benefits including $60,185.76 for medical bills, temporary disability of $12,580.39, and a permanent partial impairment award of $8,400. To support this amount, Anderson cited to her answers to interrogatories which indicate that she received disability benefits of $12,580.39 and medical benefits of $60,057.14, for a total of $72,637.53 in worker's compensation benefits. The answer also indicated that a permanent partial impairment rating and award were pending. Anderson further cited to a spreadsheet titled "Workers Compensation Payment Detail" which lists a total amount of $64,646.48. To the extent a discrepancy exists in these numbers, we use the amount of $81,166.15, which is the sum Anderson claims she received in worker's compensation benefits.

2

2.      Caused by an accident.

\* \* \* \* \*

C.      "Underinsured motor vehicle" means a land motor vehicle or trailer of any type for which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is either:

1.      Less than the limit of liability for this coverage; or

2.      Reduced by payments to persons, other than "insureds", injured in the accident to less than the limit of liability for this coverage.

Appellant's Appendix at 163.

With respect to the limit of liability, the Policy states:

LIMIT OF LIABILITY

A.      The limit of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident.  Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:

1.      "Insureds";
2.      Claims made;
3.      Vehicles or premiums shown in the Schedule or in the Declarations; or
4.      Vehicles involved in the accident.

B.      The limit of liability shall be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible.  This includes all sums paid under Part A of this policy.

3

C.     No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A, Part B or Part C of this policy.

D.     We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

E.     We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1.     Worker's compensation law; or
2.     Disability benefits law.

Id. at 164.

On April 2, 2012, Anderson filed a complaint against Cox and Indiana Insurance. Anderson alleged that Cox was negligent and that Indiana Insurance should compensate her for her injuries and damages to the extent that such damages exceed Cox's insurance coverage.

On May 24, 2013, Indiana Insurance filed a motion for summary judgment and asserted that it had no obligation to make any payment to Anderson because she had already received payment from other sources which exceeded the limits of her underinsured motorist coverage. On June 26, 2013, Anderson filed her response in opposition to the motion.

On July 2, 2013, the court held a hearing on Indiana Insurance's motion for summary judgment, and on August 7, 2013, granted the motion. Specifically, the court held:

> The Court finds that the language of the insurance policy in question in this cause requires that any amounts [Anderson] has received previously in this cause are to be credited against the limit of liability under the underinsured

4

motorist clause in the insurance policy at issue here and not credited against total damages.

The policy limits at issue here are $100,000.00. [Anderson] has received $25,000.00 from the tort-feasor in this cause and $81,166.15 from Workmens' Compensation. That totals more than the policy limit and, therefore, [Anderson] cannot recover anything further from [Indiana Insurance].

Id. at 4.

## DISCUSSION

The issue is whether the trial court erred in granting summary judgment in favor of Indiana Insurance. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. Mangold, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. Id. In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. Catt v. Bd. of Commr's of Knox Cnty., 779 N.E.2d 1, 3 (Ind. 2002). The entry of specific findings and conclusions does not alter the nature of a summary judgment which is a judgment entered when there are no genuine issues of material fact to be resolved. Rice v. Strunk, 670 N.E.2d 1280, 1283 (Ind. 1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions of law. Id. They merely aid our review by providing us with a statement of reasons for the trial court's actions. Id.

5

Insurance contracts "are governed by the same rules of construction as other contracts." Colonial Penn Ins. Co. v. Guzorek, 690 N.E.2d 664, 667 (Ind. 1997). The interpretation of an insurance contract is a question of law, and we address it *de novo*. Dunn v. Meridian Mut. Ins. Co., 836 N.E.2d 249, 251 (Ind. 2005). Clear and unambiguous policy language is given its ordinary meaning in order to accomplish the primary goal of contract interpretation of determining the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties. Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co., 983 N.E.2d 574, 577-578 (Ind. 2013). Where contractual language is ambiguous, we generally resolve those ambiguities in favor of the insured, but will not do so if such an interpretation fails to harmonize the provisions of the contract as a whole. Id. at 578. The failure to define a contractual term does not necessarily make that term ambiguous, nor does a simple disagreement about the term's meaning. Id. Rather, an ambiguity exists where the provision is susceptible to more than one reasonable interpretation. Id. To the extent that we interpret portions of Ind. Code §§ 27-7-5, we observe that "the interpretation of a statute is a question of law," and we consider it *de novo*. State v. Int'l Bus. Machs. Corp., 964 N.E.2d 206, 209 (Ind. 2012).

Setoff provisions in uninsured motorist and underinsured motorist policies have generated frequent litigation, often focusing on whether payment to an insured from a third party should be deducted from the total amount of damages sustained by the insured or from the limits of liability of the uninsured or underinsured coverage. Kinslow v. GEICO Ins. Co., 858 N.E.2d 109, 111 (Ind. Ct. App. 2006). Anderson argues that the policy here merely permits worker's compensation benefits paid to an insured to be

credited against total damages and not against the limit of liability, and contends that the statement in part B under "Limit of Liability" that "[t]he limit of liability shall be reduced by all sums paid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible," refers to the owner or operator of the underinsured motor vehicle as defined in the insuring agreement section of the UIM coverage part. Appellant's Brief at 9. She contends that neither her employer nor its worker's compensation carrier was "legally responsible" for causing her bodily injury in the accident. Id. at 10. She cites Beam v. Wausau Ins. Co., 765 N.E.2d 524 (Ind. 2002), for the proposition that worker's compensation payments are to be setoff or credited against total damages, and not the Policy limit. Anderson also points to Ind. Code § 27-7-5-5(c) which governs the amount of underinsured motorist coverage.

Indiana Insurance argues that Anderson's employer is a legally responsible organization within the meaning of the Policy. It points to the Indiana Worker's Compensation Act to support the idea that Anderson's employer was "legally responsible" within the meaning of the Policy. Indiana Insurance contends that because the worker's compensation benefits were paid "by or on behalf of" an "organization" who was "legally responsible" for Anderson's "bodily injury," the Policy permits the insurer to a setoff of those payments from the limit of liability. Appellee's Brief at 8. It asserts that Beam is of little precedential value in this case because that case did not consider whether the worker's compensation payments should be a setoff from the policy limits, and Indiana Insurance relies on Am. Econ. Ins. Co. v. Motorists Mut. Ins. Co., 605 N.E.2d 162 (Ind. 1992).

7

In her reply brief, Anderson argues that neither her employer nor its worker's compensation carrier were "legally responsible" for causing her bodily injury in the accident. Anderson also argues that interpreting Paragraph B of the Limit of Liability section to require the amount paid by worker's compensation to be a setoff from the liability limit opens a "pandora's box of potential credits or set-off[s] against the liability limit." Appellant's Reply Brief at 4-5. She contends that, at a minimum, the phrase "legally responsible" in Paragraph B is ambiguous. Id. at 5. Anderson also cites Am. Econ. for the proposition that "legally responsible" means those directly liable for causing the injuries. Id. at 12.

A.    Setoff of Worker's Compensation Benefits

We first address whether the amount received by Anderson in worker's compensation benefits should reduce her total damages or the Policy limit. In 1992, the Indiana Supreme Court decided two cases involving underinsured and uninsured motorist setoff provisions, Tate v. Secura Ins., 587 N.E.2d 665 (Ind. 1992), and Am. Econ. Ins. Co. v. Motorists Mut. Ins. Co., 605 N.E.2d 162 (Ind. 1992). In Tate, the applicable policy had a provision stating: "Amounts payable will be reduced by . . . [a]mounts paid because of the *bodily injury* by, or on behalf of, persons or organizations who may be legally responsible." 587 N.E.2d at 668. The Court construed this language as follows: "It is [the] amount of damages, not the coverage limit, which is the 'amounts payable' to be reduced by the amount paid to Tate by or on behalf of the tortfeasor." Id. The Court observed that this result was supported by the definition of "underinsured motor vehicle" as one whose applicable bodily injury liability coverage was less than the "total damages" which would be recoverable, "but which are uncompensated because the

8

damages exceed those limits." Id. The Court noted that the policy did not define "underinsured motor vehicle" as one for which applicable liability coverage was also less than the limits of the insured's underinsured motorists coverage. Id.

In Am. Econ., the Court reviewed the language of the uninsured motorists coverage found in two insurance policies. 605 N.E.2d at 164. The dispute focused on an automobile accident involving a driver insured by Motorists Mutual Insurance Company ("Motorists") who was driving a borrowed vehicle insured by American Economy Insurance Company ("American"). Id. at 163. The Court found the language of these insurance policies to be distinguishable from the policy in Tate. American's policy had a "LIMIT OF LIABILITY" section which provided in part: "Any amount payable under this insurance shall be reduced by . . . All sums paid by or for anyone who is legally responsible, including all sums paid under the policy's LIABILITY INSURANCE." Id. at 164. The Motorists policy also articulated a specific limitation of liability in a reduction clause which stated: "Any amounts otherwise payable for damages under this coverage shall be reduced by all sums . . . [p]aid because of the bodily injury or property damage by or on behalf of persons or organizations who may be legally responsible." Id. The Court held that the amount already recovered by the insured from the insurer of the driver allegedly at fault would be deducted from the insured's policy limits, not the total damages sustained, unlike in Tate. Id. at 164-165. The Court noted:

> In discussing the potential recovery available under the excess coverage provided by Motorists, we note the policy provision that amounts payable under its underinsured motorists coverage are to be reduced by sums paid "because of the bodily injury or property damage sustained by or on behalf of persons or organizations who may be legally responsible." It may seem unclear whether this would require a reduction to be made for payments from American's underinsured motorists coverage. The policy provision is

9

analogous to Ind. Code § 27-7-5-5(c)(1)(A) which permits a reduction for "the amount paid *in damages* to the insured by or for any person or organization *who may be liable for the insured's bodily injury*" (emphasis added). This reduction would not include underinsured motorists coverage payments made by American. We view the policy limitation to be no more restrictive upon the insured than the statutory language. We therefore construe the Motorists's policy phrase to refer only to sums from those directly liable for causing the injuries, and to not permit reduction from amounts payable for sums from American's underinsured motorists coverage. As a matter of public policy, however, in no event will Motorists be required to pay an amount which would result in compensation to the insured for more than the total actual damages sustained.

Id. at 165 n.5.

Ten years later, the Indiana Supreme Court granted transfer in Beam v. Wausau Ins. Co., 765 N.E.2d 524 (Ind. 2002), to address two different lines of interpretation involving underinsured and uninsured motorist setoff clauses that this court had developed after Am. Econ. and Tate. 765 N.E.2d at 529. In Beam, the plaintiff truck driver was involved in an accident with a passenger vehicle. Id. at 526. Beam sued the other driver, and a jury awarded him $701,371 in damages. Id. at 526-527. The trial court reduced that amount by deducting compensation Beam had already received including: (1) $20,000 from the other driver's insurer; (2) $80,000 from Beam's own underinsured motorist policy; (3) $310,206.56 in worker's compensation medical benefits; and (4) $86,945.14 in worker's compensation disability payments. Id. at 527. Those deductions reduced Beam's recovery to $204,219.30, payable from the automobile liability policy of Beam's employer provided by Wausau, which furnished $1,000,000 in underinsured motorist coverage. Id. at 527. That policy provided, in pertinent part:

A.  COVERAGE

1.  We will pay the sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of

10

an "uninsured motor vehicle" or an "underinsured motor vehicle."

\* \* \* \* \*

C.     EXCLUSIONS

This insurance does not apply to: . . .

2.     The direct or indirect benefit of any insurer or self-insurer under any workers compensation, disability benefits or similar law.

\* \* \* \* \*

D.     LIMIT OF INSURANCE

\* \* \* \* \*

2.     The Limit of Insurance under this coverage shall be reduced by all sums paid or payable by or for anyone who is legally responsible, including all sums paid under the Coverage Form's LIABILITY COVERAGE.

3.     Any amount payable for damages under this coverage shall be reduced by all sums paid or payable under any workers' compensation, disability benefits or similar law.

Id.

Beam appealed the deduction, arguing that Section D3 of the policy was ambiguous because it was unclear whether the "amount payable for damages under this coverage" referred to the $1,000,000 policy limit or to his $701,371 damage award.  Id. at 527-528.  The Court affirmed, concluding the contract unambiguously used the phrase "amount payable for damages" to mean "damages" and thus the trial court's calculations were correct.  Id. at 530-531.  The Court reasoned "that when the policy attempts to reduce limits, as opposed to damages, it chooses language that does precisely that," as it

11

did in Section D2, which "by reducing the 'limit of insurance,' unmistakably provides that any reduction is to be taken from the policy limit." Id. at 531.

In the present case, the relevant provision of the Policy is titled "LIMIT OF LIABILITY" and provides:

B.    The limit of liability shall be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of this policy.

\* \* \* \* \*

E.    We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

    4.    Worker's compensation law; or
    5.    Disability benefits law.

Appellant's Appendix at 164.

We find Paragraph E dispositive and find Imre v. Lake States Ins. Co., 803 N.E.2d 1126 (Ind. Ct. App. 2004), trans. denied, instructive. In that case, Gregory Gambill was a passenger on an all terrain vehicle ("ATV") operated by Adam Blossom. 803 N.E.2d at 1128. Krista Gillikin was operating a pickup truck and when Blossom made a sudden left turn, Gillikin's pickup truck struck the ATV, and Gambill and Blossom were thrown from the ATV. Id. Gambill sustained bodily injuries in excess of $200,000 as a result of the incident. Id.

At the time of the accident, Gillikin was insured by United Farm Family Mutual Insurance Company ("United Farm"). Id. United Farm's Insurance agreement with Gillikin limited Gillikin's insurance coverage to $50,000. Id. United Farm tendered that amount to Gambill. Id. Blossom did not possess insurance coverage for the incident in

question.  Id.  Gambill was insured pursuant to a policy with Lake States Insurance Company ("Lake States") which provided Gambill with $100,000 of uninsured and underinsured motorist coverage.  Id.

Velvet Imre, individually and as next friend of Gambill, filed suit against Lake States and alleged that because Gambill's injuries resulted from the combined negligence of both an uninsured and an underinsured motorist, Gambill was entitled to recover from both the underinsured and uninsured motorist coverage provisions of the policy, resulting in a net recovery of $200,000.  Id. at 1128-1129.  Lake States moved for partial summary judgment and alleged that its liability for the incident was limited to $50,000, which was derived from United Farm's $50,000 payment to Gambill subtracted from Gambill's $100,000 underinsured motorist coverage.  Id. at 1129.  The trial court granted Lake States' motion for partial summary judgment.  Id.

On appeal, Imre contended that the terms of the policy allowed Gambill to recover $100,000 pursuant to the underinsured motorist coverage provision of the policy and an additional $100,000 pursuant to the uninsured motorist coverage provision of the policy, providing Gambill with a net recovery of $200,000.  Id. at 1130.

Section C of the Uninsured Motorist Coverage Limit of Liability provision of the policy stated: "No one will be entitled to receive duplicate payments for the same elements of loss under [this policy's Uninsured Motorist Coverage provision] and . . . [a]ny Underinsured Motorists Coverage provided by this policy."  Id.  Section C of the Underinsured Motorist Coverage Limit of Liability provision of the policy stated: "No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A, Part B, or Part C of this policy."  Id.

13

Imre asserted that "same elements of loss" contained within these provisions was not defined by the policy and that the term could be construed to denote "same element of damages" rather than the proposition that Gambill is not entitled to recover pursuant to both the uninsured and underinsured motorist provisions of the policy. Id. Under Imre's interpretation, because there was ambiguity in the insurance contract, it must be construed against Lake States by interpreting "same elements of loss" to denote "same elements of damages." Id.

The court found Imre's argument unpersuasive. Id. The court observed that when the policy referenced "damages" it explicitly uses the term "damages." Id. The policy used the term "damages" on at least six separate occasions. Id. The court held that it must accept an interpretation of the contract language that harmonizes the provisions of the insurance contract rather than one which supports a conflicting version of the provisions. Id. at 1130-1131.

The court held that because "same elements of loss" did not denote "same elements of damages," Imre had not advanced a plausible interpretation of "same elements of loss" to compete with the interpretation advanced by Lake States and there was no ambiguity in the term. Id. at 1131. The court held that "as the name 'Limit of Liability Clause' suggests, the term 'same elements of loss' within Section C of the Underinsured and Uninsured Motorist Clauses serves to denote that an insured may not recover under both the underinsured and uninsured provisions of the Policy." Id. The court also held that Imre could not have understood the policy to provide $200,000 worth of coverage as a result of the happenstance that Gambill's injury arose from the negligence of both an uninsured and underinsured motorist. Id.

14

Similar to Imre, here, Paragraph E mentions "element of loss" and does not mention damages. Further, the portion of the Policy addressing underinsured motorists coverage uses the term "damages" on other occasions.[2] Also, similar to Am. Econ., Paragraph E falls under the section titled "LIMIT OF LIABILITY." Unlike Tate, the Policy defines an "[u]nderinsured motor vehicle" as one for which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is either: "1. Less than the limit of liability for this coverage; or 2. Reduced by payments to persons, other than 'insureds', injured in the accident to less than the limit of liability for this coverage." Appellant's Appendix at 163. Based upon Paragraph E, we cannot say that the trial court erred to the extent that it reduced the amount Anderson received from worker's compensation from the Policy limit.[3]

B.      Whether the Setoff Provision Contravenes Ind. Code §§ 27-7-5

We next turn to whether the Policy is consistent with our state statutes. We find Justice v. Am. Family Mut. Ins. Co. (filed March 13, 2014), Ind. No. 49S02-1303-PL-221, instructive. In that case, an underinsured motorist collided with an IndyGo city bus

---

[2] Specifically, the Policy states: "The limit of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death . . . ." Appellant's Appendix at 164. The Policy also states "[a]ny recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit  . . . ." Id. The Policy also states that "[a] decision agreed to by at least two of the arbitrators will be binding as to . . . [t]he amount of damages . . . ." Id. at 165.

[3] With respect to Anderson's reliance on Ansert By and Through Ansert v. Indiana Farmers Mut. Ins. Co., 659 N.E.2d 614 (Ind. Ct. App. 1995), and Beam, we find the language in the policies in those cases to be distinguishable. In Ansert, the policy provided under a section titled "LIMITS OF LIABILITY" that "[a]ny amounts payable will be reduced by . . . a payment made or amount payable because of the bodily injury under any workers' compensation law or disability benefits law or similar law." 659 N.E.2d at 616. In Beam, the policy stated: "Any amount payable *for damages* under this coverage shall be reduced by all sums paid or payable under any workers' compensation, disability benefits or similar law." 765 N.E.2d at 527 (emphasis added).

15

driven by Howard Justice, and Justice received a net amount of $71,958.50 in worker's compensation benefits and $25,000 from the underinsured motorist's insurer, bringing his total recovery to $96,958.50. Justice, slip op. at 2. At the time of the accident, Justice carried an underinsured motorist policy issued by American Family Mutual Insurance Company ("American Family") that provided coverage up to $50,000 per person and $100,000 per accident. Id.

Based upon the policy language which differs from the language in the present case, the Court concluded that the worker's compensation benefits would be deducted from the policy limit. Id. at 9. Specifically, the Court held that in application, this meant that the "limits of liability of this coverage," $50,000, will be reduced by the $25,000 payment Justice received from a "legally liable" entity – the underinsured motorist's insurer – and by the $71,958.50 Justice received in workers' compensation and disability benefits. Id. The Court held that the equation worked out as follows: $50,000.00 policy limit – $25,000 from the underinsured motorist's insurer – $71,958.50 = -$46,958.50. Id. The Court concluded that the policy limit was reduced to zero under such a calculation. Id.

The Court observed that the inquiry did not end there because the policy language must comport with state statutes. Id. The Court then discussed Ind. Code § 27-7-5-2(a) which at that time provided in pertinent part: "underinsured motorist coverage must be made available in limits of not less than fifty thousand dollars ($50,000) . . . Insurers may not sell or provide underinsured motorist coverage in an amount less than fifty thousand

16

dollars ($50,000)."[4]  Id. at 9-10.  The Court observed that the "purpose of uninsured and underinsured motorist insurance coverage is 'to promote the recovery of damages for innocent victims of auto accidents with uninsured or underinsured motorists.'"  Id. at 10 (quoting United Nat. Ins. Co. v. DePrizio, 705 N.E.2d 455, 459 (Ind. 1999)).  "Consistent with that purpose, Ind. Code § 27-7-5-2 'is a mandatory, full-recovery, remedial statute.'"  Id. (quoting Lakes v. Grange Mut. Cas. Co., 964 N.E.2d 796, 804 (Ind. 2012) (quoting DePrizio, 705 N.E.2d at 460)).  The Court held that the amendment history of the statute unequivocally demonstrates an intent by our legislature to give insureds the opportunity for full compensation for injuries inflicted by financially irresponsible motorists.  Id. at 10-11.  The Court observed that "[s]ince the statute was enacted, insurers have tried to circumvent its minimum coverage requirement in various ways – but always unsuccessfully."  Id. at 11.

The Court observed that the worker's compensation setoff provision operated to reduce the policy limit to zero and that it must decide whether Ind. Code § 27-7-5-2(a) permitted such a reduction.  Id. at 11-12.  The Court observed that Justice did not receive the full statutory minimum from the tortfeasor's insurer where the minimum was $50,000 and Justice received only $25,000.  Id. at 12.  The Court held that "[i]f [the underinsured motorist] had carried the required amount of liability insurance, Justice would have received $50,000, and the purpose of our uninsured/underinsured motorist statute is to put him in that position."  Id. at 12-13.  The Court concluded that in light of the statutory purpose and precedent that Justice was entitled to recover the remaining $25,000 from

---

[4] At the time of the accident in this case, Ind. Code § 27-7-5-2(a) contained the same statements. The statute was subsequently amended, but we note the relevant language has not changed.  See Pub. L. No. 116-2011, § 2; Pub. L. No. 125-2012, § 403; Pub. L. No. 148-2013, § 1.

American Family and that any policy provision to the contrary is unlawful and unenforceable. Id. at 13.

Here, the trial court ordered that Anderson could not recover anything from Indiana Insurance because she had received $25,000 from Cox and $81,166.15 in worker's compensation benefits and the sum of these amounts exceeded the policy limit of $100,000. Based upon Justice, we conclude that the trial court erred in finding that Anderson could not recover anything from Indiana Insurance. In other words, if Cox had carried the required amount of liability insurance, depending on her total damages Anderson may have received $50,000 in addition to the $81,166.15, and the purpose of the uninsured/underinsured motorist statute is to put her in that position. In light of that statutory purpose, we conclude that Anderson may be entitled to recover the remaining $25,000 from Indiana Insurance depending on her total damages. See Justice, slip op. at 12-13; cf. Hardiman v. Governmental Interinsurance Exch., 588 N.E.2d 1331, 1335 (Ind. Ct. App. 1992) ("Since Hardiman received the statutory minimum, we find G.I.E.'s application of the worker's compensation set-off provision does not violate public policy."), trans. denied.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's grant of summary judgment to Indiana Insurance and remand for proceedings consistent with this opinion.

Reversed and remanded.

ROBB, J., and BARNES, J., concur.